# EXHIBIT C

CAUSE NO. _____

| | | |
|---|---|---|
| TYUS BOWSER, | § | IN THE DISTRICT COURT OF |
|    Plaintiff, | § | |
| | § | |
| v. | § | HARRIS COUNTY, TEXAS |
| | § | |
| NFL PLAYERS ASSOCIATION, | § | |
| and ANDREW MORRIS, individually, | § | |
|    Defendants. | § | \_\_\_\_ JUDICIAL DISTRICT |

## PLAINTIFF'S ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Plaintiff TYUS BOWSER ("Bowser" or "Plaintiff"), by and through his undersigned attorneys, and files this Original Petition against Defendants NFL PLAYERS ASSOCIATION ("NFLPA") and ANDREW MORRIS ("Morris"), and in support thereof would respectfully show the Court as follows:

## I.
## DISCOVERY LEVEL & CLAIM FOR RELIEF

1. Plaintiff intends to conduct discovery under Level 3 of the Texas Rules of Civil Procedure. TEX. R. CIV. P. 190.4.

2. Plaintiff seeks monetary relief of over $1,000,000 and a demand for judgment for all other relief to which Plaintiff deems himself entitled. TEX. R. CIV. P. 47.

## II.
## PARTIES

3. Plaintiff TYUS BOWSER is a natural person and former professional football player in the National Football League ("NFL"). Bowser currently resides in Harris County, Texas.

4. Defendant NFL PLAYERS ASSOCIATION is an unincorporated labor organization organized under the laws of the District of Columbia. The NFLPA serves as the exclusive collective bargaining representative of all NFL players pursuant to the National Labor

1

Relations Act, 29 U.S.C. §§ 151–169. The NFLPA's principal office is located at 1133 20th Street NW, Washington, DC 20036. The NFLPA may be served with process through the Texas Secretary of State pursuant to the Texas long-arm statute, TEX. CIV. PRAC. & REM. CODE §§ 17.041–17.045, or through its principal office at the address above.

5.      Defendant ANDREW MORRIS is a natural person who, at all times relevant hereto, was employed by the NFLPA as an attorney in its Legal Department. Morris was the NFLPA attorney who dismissed Bowser's Grievance without authorization from Bowser or his counsel. Morris may be served at his place of employment at 1133 20th Street NW, Washington, DC 20036, or wherever he may be found.

### III.
### JURISDICTION AND VENUE

6.      This Court has personal jurisdiction over the NFLPA because the NFLPA purposefully availed itself of the privilege of conducting activities within the State of Texas, including representing NFL players employed by Texas-based teams, communicating with Texas-based counsel regarding the handling of Bowser's Grievance, and regularly transacting business within the State of Texas. The NFLPA's contacts with Texas are sufficient to establish both general and specific jurisdiction. *See* TEX. CIV. PRAC. & REM. CODE § 17.042.

7.      This Court has personal jurisdiction over Morris because he purposefully directed conduct into the State of Texas in connection with his handling of Bowser's Grievance, including the unauthorized dismissal of a Grievance filed on behalf of a Texas resident and communications related thereto.

8.      Venue is proper in Harris County, Texas because a substantial part of the events or omissions giving rise to the claims occurred in Harris County, where Plaintiff received (or failed to receive) the benefits of Defendants' representation. TEX. CIV. PRAC. & REM. CODE § 15.002.

Unofficial Copy Office of Marilyn Burgess District Clerk

9. To the extent any claims herein may be subject to preemption under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, Plaintiff reserves the right to pursue such claims in the appropriate federal court and/or asserts that a hybrid Section 301/duty of fair representation claim lies in this Court or in federal court, as applicable. Plaintiff further asserts that his state-law claims are independent of and not preempted by federal labor law to the extent they arise from Defendants' independent tortious conduct.

**IV.**
**FACTUAL BACKGROUND**

**A. Bowser's NFL Career and Knee Injury**

10. On or about March 20, 2021, Bowser signed an NFL Player Contract with the Baltimore Ravens ("Ravens" or "Club"), covering the 2021 through 2024 NFL seasons.

11. During the 2023 offseason, Bowser suffered an injury to his right knee. The Ravens characterized the injury as a "non-football-related injury" and communicated that position to Bowser by letter dated July 18, 2023, from Eric DeCosta, the Ravens' Executive Vice President and General Manager.

12. Bowser subsequently elected to have surgery performed on his right knee by Dr. Neal ElAttrache, an outside physician in Los Angeles. The Ravens agreed to pay for the surgery but informed Bowser that the Club was not assuming responsibility for the injury or the surgery and reserved all rights under the NFL Collective Bargaining Agreement ("CBA").

13. The Ravens placed Bowser on the Active/Non-Football Injury/Illness list on July 21, 2023, and on the Reserve/Non-Football Injury/Illness ("NFI") list on August 29, 2023. Bowser was unable to play for the entire 2023 season.

Unofficial Copy Office of Marilyn Burgess District Clerk

14.     Throughout the 2023 season, Bowser continued to seek outside treatment from multiple physicians, including Dr. ElAttrache, Dr. Nathan Yokel (beginning October 2023), and Dr. Walt Lowe in Houston (beginning January 2024).

15.     On or about February 24, 2024, Bowser was informed for the first time that his chronic knee issues were caused by a localized staph infection that he contends was contracted during medical treatment provided by the Club. Thus, this was an injury incurred pursuant to his obligation to perform services for the Club under his NFL Player Contract.

16.     On February 20, 2024, the Ravens sent a second letter to Bowser from DeCosta, advising that a second surgery Bowser elected to undergo with Dr. Lowe was also not "Club-authorized" surgery and that the Club disclaimed responsibility for the cost of the surgery or any resulting rehabilitation.

17.     On March 13, 2024, the Ravens terminated Bowser's contract after he refused to provide the Club with copies of his outside medical records.

**B.      The Filing of the Grievance**

18.     Following the discovery of the staph infection and termination of his contract, Bowser retained Micah Dortch of DORTCH LINDSTROM LIVINGSTON LAW GROUP ("Plaintiff's Counsel") to pursue legal remedies on his behalf, including a grievance through the NFLPA against the Ravens under the CBA.

19.     On March 19, 2024, NFLPA Staff Counsel Todd Flanagan ("Flanagan") emailed Plaintiff's Counsel stating: "Call me today when you can. I need some background facts for my grievance against the Ravens. Will send you the draft before I file to make sure I do not cause any problems on the med mal side." Plaintiff's Counsel engaged in multiple calls and communications with Flanagan to coordinate the filing.

4

20. On April 4, 2024, the NFLPA, through Flanagan, filed a Grievance on behalf of Bowser ("the Grievance"), challenging the Club's placement of Bowser on the NFI list on July 21, 2023, and August 29, 2023, as "improper." The Grievance alleged that Bowser contracted a staph infection in his knee while undergoing treatment by the Club, which prevented him from practicing or playing for the entire 2023 season, and that the infection was incurred pursuant to his obligation to perform services for the Club.

21. The NFL Management Council, on behalf of the Ravens, denied the Grievance in its entirety and asserted, among other defenses, that the claims were untimely under Article 43, Section 2 of the CBA, which requires that non-injury grievances be initiated within fifty (50) days from the date of the occurrence or from the date on which the facts reasonably should have been known.

22. The matter was assigned to Arbitrator Sidney Moreland, IV, and a hearing was initially scheduled for October 15, 2024.

**C. Defendants' Unauthorized Postponement and Abandonment of the Grievance**

23. On or about August 7, 2024, Flanagan emailed Plaintiff's Counsel and stated: "Do we need to schedule his case for the fall?" Flanagan then stated: "Since it is better as leverage for a lawsuit, I would rather it just be inactive for awhile." At no time did Bowser authorize the NFLPA to render his Grievance "inactive" or to make strategic decisions about the Grievance without his input.

24. On or about September 10, 2024, Flanagan emailed Plaintiff's Counsel and stated: "Emailed you about a month ago. I am going to postpone his case." Flanagan further stated: "He signed a new contract so whatever else it means, he likely will not want to come to the hearing."

Unofficial Copy Office of Marilyn Burgess District Clerk

5

At no time did anyone from the NFLPA consult with Bowser before deciding to postpone his Grievance hearing.

25. Plaintiff's Counsel promptly followed up on September 13, 2024, and again on September 18, 2024, requesting updates and asking for Bowser's medical records. Plaintiff's Counsel specifically directed: "Let's move it. Can you send me his medical records?"

26. Notwithstanding Plaintiff's Counsel's requests, without Bowser's knowledge or authorization, on or about September 13, 2024, the NFLPA, through coordinator Sydney Eckert, submitted a postponement letter to Arbitrator Moreland requesting that the October 15, 2024, hearing be postponed.

27. On September 14, 2024, Arbitrator Moreland acknowledged the postponement without charging a fee, given the thirty days' notice. On September 26, 2024, the NFL Management Council, through Meghan Cannella Carroll, requested new hearing dates from the Arbitrator.

28. On October 18, 2024, Arbitrator Moreland provided available dates including November 15 and December 13, 2024. That same day, the Management Council and Ravens confirmed availability for either date. On October 23, 2024, Flanagan responded to the Arbitrator and all parties: "I am not available either of those dates," effectively ensuring further delay of the Grievance hearing.

29. The NFL Management Council subsequently filed a Pre-Hearing Motion to Bifurcate and Dismiss the Grievance as untimely, arguing that Bowser's Grievance filed on April 4, 2024, was more than 200 days beyond the CBA's 50-day filing requirement. The Management Council's motion cited extensive NFL arbitration precedent strictly enforcing the timeliness

Unofficial Copy Office of Mailyn Burgess District Clerk

provisions, including cases where grievances were dismissed as untimely even when filed only two days late. The merits hearing was rescheduled to May 20, 2025.

30. Upon information and belief, the NFLPA, through Morris, dismissed Bowser's Grievance without authorization from Bowser. At no time did Bowser consent to, authorize, or direct the dismissal, abandonment, or withdrawal of his Grievance. Neither the NFLPA nor Morris consulted with Bowser or his counsel before dismissing the Grievance.

31. Defendants' unauthorized postponements, delays, scheduling refusals, and ultimate failure to prosecute the Grievance directly and foreseeably prejudiced Bowser. The delays strengthened the Management Council's already-existing timeliness defense and caused Bowser to lose his only available contractual remedy for the Ravens' improper NFI designation and the resulting loss of salary, benefits, and career opportunities.

## V.
**FIRST CAUSE OF ACTION:**
## COUNT I: BREACH OF THE DUTY OF FAIR REPRESENTATION
(Against NFLPA)

32. Plaintiff incorporates by reference all preceding paragraphs as though set forth fully herein.

33. As the exclusive bargaining representative of NFL players, the NFLPA owes each player it represents, including Bowser, a duty of fair representation. This duty, implied under the National Labor Relations Act and recognized by the United States Supreme Court, requires the union to represent all members of the bargaining unit without hostility or discrimination, in good faith, and without arbitrary or perfunctory conduct. See Vaca v. Sipes, 386 U.S. 171 (1967); Air Line Pilots Ass'n, Int'l v. O'Neill, 499 U.S. 65 (1991).

34. The NFLPA breached its duty of fair representation to Bowser by, among other things:

Unofficial Copy Office of Marilyn Burgess District Clerk

7

a. Postponing Bowser's Grievance hearing without his knowledge or authorization;

b. Unilaterally deciding to render the Grievance "inactive" for the NFLPA's own strategic purposes without consulting Bowser or obtaining his consent;

c. Failing to make itself available for rescheduled hearing dates, thereby ensuring further delay;

d. Dismissing, abandoning, or otherwise failing to prosecute Bowser's Grievance without authorization from Bowser;

e. Failing to adequately and diligently pursue the Grievance on Bowser's behalf;

f. Failing to communicate material developments in the Grievance to Bowser or his counsel in a timely manner; and

g. Acting in an arbitrary, discriminatory, and/or bad faith manner in its handling of the Grievance.

35. The NFLPA's conduct was arbitrary, discriminatory, and/or in bad faith. The decision to render Bowser's Grievance "inactive" and thereafter to fail to prosecute it was not the product of a rational, good-faith assessment of Bowser's interests. Rather, it reflected perfunctory, reckless, and indifferent decision-making that disregarded Bowser's rights and interests. The NFLPA's pattern of well-documented institutional failures to protect player interests as revealed in recent litigation and public reporting further supports the conclusion that the NFLPA's treatment of Bowser's Grievance was not an isolated incident but part of a broader pattern of neglect.

36. As a direct and proximate result of the NFLPA's breach of its duty of fair representation, Bowser has suffered damages including, but not limited to, loss of salary and benefits under his NFL Player Contract, loss of the opportunity to recover contractual remedies through the grievance process, loss of future earning capacity, mental anguish, and other consequential damages.

Unofficial Copy Office of Marilyn Burgess District Clerk

**VI.**
**SECOND CAUSE OF ACTION**
**NEGLIGENCE / LEGAL MALPRACTICE**
(Against NFLPA and Morris)

37. Plaintiff incorporates by reference all preceding paragraphs as though set forth fully herein.

38. The NFLPA, through its attorneys and staff, including Staff Counsel Todd Flanagan and Morris, undertook the legal representation of Bowser in connection with his Grievance against the Ravens. In doing so, Defendants assumed a duty to exercise ordinary care and professional skill in the handling, prosecution, and resolution of the Grievance consistent with the standard of care applicable to attorneys handling grievance proceedings under the NFL CBA.

39. Defendants breached their duty of care to Bowser by, among other things:

a. Failing to timely and diligently prosecute the Grievance;

b. Postponing and delaying the Grievance hearing without client authorization;

c. Failing to appear or make itself available for scheduled and rescheduled hearing dates;

d. Dismissing, abandoning, or failing to prosecute the Grievance without client authorization or consent;

e. Failing to adequately communicate with Bowser regarding the status and disposition of the Grievance;

f. Making strategic decisions about the Grievance (including rendering it "inactive") without client consultation; and

g. Failing to protect Bowser's interests in the Grievance proceedings.

40. But for Defendants' negligence, Bowser's Grievance would have proceeded to a hearing on the merits before Arbitrator Moreland in October 2024. Bowser had meritorious claims that the Ravens improperly placed him on the NFI list when, in fact, his chronic knee issues were caused by a staph infection contracted during treatment by the Club. This was an injury that

9

incurred pursuant to his obligation to perform services for the Club under his NFL Player Contract. An expert witness retained by Plaintiff's Counsel has confirmed that the staph infection was caused by the Club's treatment and could not have been discovered earlier because the Club refused to perform the requisite testing.

41. As a direct and proximate result of Defendants' negligence, Bowser lost the ability to prosecute his Grievance and has been damaged in an amount to be proven at trial.

**VII.**
**THIRD CAUSE OF ACTION**
**BREACH OF FIDUCIARY DUTY**
(Against NFLPA and Morris)

42. Plaintiff incorporates by reference all preceding paragraphs as though set forth fully herein.

43. By undertaking the representation of Bowser in the Grievance proceedings, Defendants assumed a fiduciary relationship with Bowser. This fiduciary relationship required Defendants to act in Bowser's best interests, to communicate material information regarding the Grievance, and to refrain from taking material actions without Bowser's informed consent.

44. Defendants breached their fiduciary duties to Bowser by unilaterally postponing, delaying, and ultimately abandoning or dismissing his Grievance without authorization; by failing to communicate material developments; and by prioritizing Defendants' own convenience and strategic preferences over Bowser's rights and interests.

45. As a direct and proximate result of Defendants' breach of fiduciary duty, Bowser has suffered damages including, but not limited to, loss of his contractual grievance remedy, loss of salary and benefits, loss of future earning capacity, mental anguish, and other consequential damages.

Unofficial Copy Office of Marilyn Burgess District Clerk

10

## VIII.
## DAMAGES

46. As a result of the NFLPA's conduct as described herein, Bowser has suffered the following categories of damages:

 a. Lost salary and benefits under his NFL Player Contract with the Ravens for the 2023 season, during which he was improperly classified on the NFI list;

 b. Loss of the opportunity to recover through the grievance and arbitration process under the CBA;

 c. Loss of future earning capacity resulting from the contract termination and inability to vindicate his rights through the CBA grievance process;

 d. Mental anguish and emotional distress;

 e. Prejudgment and post-judgment interest at the highest lawful rate; and

 f. Costs of court and reasonable and necessary attorneys' fees.

## IX.
## CONDITIONS PRECEDENT

47. All conditions precedent to Plaintiff's right to recover have been performed or have occurred.

## X.
## JURY DEMAND

48. Plaintiff demands a trial by jury on all issues so triable and tenders the appropriate jury fee.

WHEREFORE, Plaintiff Tyus Bowser respectfully prays that upon final trial of this matter, he be awarded judgment against Defendants NFL Players Association and Andrew Morris, jointly and severally, for:

 a. Actual damages in an amount to be determined at trial;

 b. Consequential damages;

11

c.  Prejudgment and post-judgment interest at the highest lawful rate;

d.  Costs of court;

e.  Reasonable and necessary attorneys' fees; and

f.  Such other and further relief, both general and special, at law and in equity, to which Plaintiff may show himself justly entitled.

Respectfully submitted,

**DORTCH LINDSTROM LIVINGSTON LAW GROUP**

By: _/s/ T. Micah Dortch_
T. Micah Dortch
Texas State Bar No. 24044981
2613 Dallas Parkway, Suite 220
Plano, Texas 75093
Telephone: 214-393-1212
Facsimile: 888-653-3299
Email: Micah@dll-law.com

Christopher D. Lindstrom
Texas State Bar No. 24032671
4306 Yoakum Blvd., Suite 270
Houston, Texas 77006
Telephone: 713-968-0060
Facsimile: 888-653-3299
Email: Chris@dll-law.com

**ATTORNEYS FOR PLAINTIFF**

Unofficial Copy Office of Marilyn Burgess District Clerk

12

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Jalissa Trevino on behalf of Timothy Dortch
Bar No. 24044981
Jalissa@dll-law.com
Envelope ID: 111879982
Filing Code Description: Petition
Filing Description: Plaintiff's Original Petition
Status as of 3/2/2026 2:36 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Luisa Ulluela | | service@dll-law.com | 3/2/2026 1:16:59 PM | SENT |
| Jalissa Trevino | | Jalissa@dll-law.com | 3/2/2026 1:16:59 PM | SENT |
| Christopher D.Lindstrom | | Chris@dll-law.com | 3/2/2026 1:16:59 PM | SENT |
| T. MicahDortch | | micah@dll-law.com | 3/2/2026 1:16:59 PM | SENT |

Unofficial Copy Office of Marilyn Burgess District Clerk