**UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| TYUS BOWSER )<br>)<br>*Plaintiff*, )<br>)<br>v. )<br>)<br>NATIONAL FOOTBALL )<br>LEAGUE PLAYERS )<br>ASSOCIATION and ANDREW )<br>MORRIS, )<br>)<br>*Defendants*. )<br>) | Case No. 4:26-cv-02384 |

**DEFENDANTS NATIONAL FOOTBALL LEAGUE PLAYERS
ASSOCIATION AND ANDREW MORRIS'S RULE 12(b)(6)
MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND
<u>MEMORANDUM IN SUPPORT</u>**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................................1

BACKGROUND .......................................................................................................3

    I.      The NFLPA and the NFL Player Contract ..............................................3

    II.     The "Nonfootball Injury or Illness" List and the Grievance Procedure ...............................................................................................4

    III.    Plaintiff's Grievance Against the Ravens.................................................5

    IV.    Mr. Bowser Files Suit Against the NFLPA and Mr. Morris ..................6

LEGAL STANDARD ...............................................................................................7

ARGUMENT ............................................................................................................9

    I.      PLAINTIFF FAILS TO PLAUSIBLY ALLEGE A DUTY OF FAIR REPRESENTATION CLAIM AGAINST THE NFLPA. ....................9

        a.     The Breach of Duty of Fair Representation Claim Is Time-Barred. ...........................................................................................9

        b.     Even If Not Time-Barred, Plaintiff Fails to Allege That the NFLPA Breached Its Duty of Fair Representation. ..................10

            i.     Plaintiff Has Not Alleged Any Conduct that Is Arbitrary, Discriminatory, or in Bad Faith. ....................................11

            ii.    Plaintiff Has Not Alleged Any Causal Connection Between the NFLPA's Conduct and His Injuries. ..........16

    II.     PLAINTIFF'S STATE LAW CLAIMS SHOULD BE DISMISSED BECAUSE THEY ARE PREEMPTED BY FEDERAL LABOR LAW. ...................................................................................................18

        a.     Plaintiff's State Law Claims Are Preempted Under the NLRA. ....................................................................................18

        b.     The LMRA Also Preempts Plaintiff's State Law Claims. ........19

    III.    EVEN IF NOT PREEMPTED, PLAINTIFF HAS FAILED TO STATE AN ACTIONABLE CLAIM FOR NEGLIGENCE, MALPRACTICE, OR A FIDUCIARY BREACH. ............................22

        a.     Plaintiff Cannot Allege Any Negligence Against the NFLPA or Legal Malpractice Against Mr. Morris. .................................22

i. Plaintiff's Legal Malpractice Claim Against Mr. Morris Fails................................................................................22

ii. Plaintiff's Negligence Claim Against the NFLPA Fails .23

b. Plaintiff Has Not Alleged a Breach of Fiduciary Duty Claim Against Either Defendant.........................................................24

CONCLUSION ................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adkins v. Mireles*,
526 F.3d 531 (9th Cir. 2008) ...............................................................25

*Air Line Pilots Ass'n v. O'Neill*,
499 U.S. 65 (1991).......................................................................11, 12

*Aldridge v. Miss. Dep't of Corr.*,
990 F.3d 868 (5th Cir. 2021) .................................................................8

*Allis-Chalmers Corp. v. Lueck*,
471 U.S. 202 (1985)............................................................................20

*Amalgamated Ass'n of St., Elec. Ry. & Motor Coach Emps. of Am. v.
Lockridge*,
403 U.S. 274 (1971)......................................................................11, 13

*Anderson v. Am. Postal Workers Union*,
2025 WL 2766700 (N.D. Ill. Sep. 26, 2025) ......................................25

*Arnold v. Air Midwest, Inc.*,
100 F.3d 857 (10th Cir. 1996) .............................................................22

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..............................................................................7

*Atkinson v. Sinclair Refining Co.*,
370 U.S. 238 (1962)............................................................................22

*Atwater v. NFL Players Ass'n*,
626 F.3d 1170 (11th Cir. 2010) ...........................................................21

*Bache v. Am. Tel. & Tel.*,
840 F.2d 283 (5th Cir. 1988) ...............................................................15

*Baltrusaitis v. Int'l Union*,
133 F.4th 678 (6th Cir. 2025) ..............................................................21

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)..................................................................................7

*Bird v. Nat'l Aeronautics & Space Agency*,
   2022 WL 20717274 (S.D. Tex. Jan. 18, 2022)..............................................10, 14

*Black v. NFL Players Ass'n*,
   87 F. Supp. 2d 1 (D.D.C. 2000)...................................................................9, 19

*Carino v. Stefan*,
   376 F.3d 156 (3d Cir. 2004) .......................................................................22

*Carr v. Airline Pilots Ass'n, Int'l*,
   866 F.3d 597 (5th Cir. 2017) ......................................................................16

*Caterpillar Inc. v. Williams*,
   482 U.S. 386 (1987)...................................................................................19, 20

*Clarett v. NFL*,
   369 F.3d 124 (2d Cir. 2004) .......................................................................3

*Connally v. Transcon Lines*,
   583 F.2d 199 (5th Cir. 1978) ......................................................................19

*Davis v. United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied
   Indus. & Serv. Workers Int'l Union, Loc. No. 13-423*,
   750 F. App'x 335 (5th Cir. 2018) ...............................................................15

*DelCostello v. Int'l Bhd. of Teamsters*,
   462 U.S. 151 (1983)...................................................................................9, 11

*Dickey v. NFL*,
   2018 WL 4623061 (D. Mass. Sept. 26, 2018), *aff'd*, 2020 WL
   6819135 (1st Cir. Feb. 13, 2020).................................................................8

*Dillard v. Seiu Loc. 32BJ*,
   2015 WL 6913944 (S.D.N.Y. Nov. 6, 2015).................................................12

*Eichelberger v. N.L.R.B.*,
   765 F.2d 851 (9th Cir. 1985) ......................................................................17

*Ford Motor Co. v. Huffman*,
   345 U.S. 330 (1953)...................................................................................18

iv

*Foster v. Jesel*,
  164 F.4th 401 (5th Cir. 2026) ...............................................................10

*Harris v. Am. Postal Workers Union*,
  198 F.3d 245 (6th Cir. 1999) ...............................................................12

*Huerta v. Shein*,
  498 F. App'x 422 (5th Cir. 2012) .........................................................25

*Jackson v. U.S. Postal Serv.*,
  2025 WL 2405213 (N.D. Tex. June 30, 2025) ....................................14

*Jefferally v. Barr*,
  2019 WL 3935977 (S.D. Tex. Aug. 20, 2019) .......................................3

*Johnson v. NFL Players Ass'n*,
  2018 WL 8188558 (S.D.N.Y. Oct. 3, 2018), *aff'd*, 820 F. App'x 51
  (2d Cir. 2020)...............................................................................8, 13, 17

*Landry v. The Cooper/T. Smith Stevedoring Co.*,
  880 F.2d 846 (5th Cir. 1989) ......................................................8, 14, 24

*Lee v. Cytec Indus., Inc.*,
  460 F.3d 673 (5th Cir. 2006) ...............................................................10

*Lingle v. Norge Div. of Magic Chef*,
  486 U.S. 399 (1988)...............................................................................19

*Marquez v. Screen Actors Guild, Inc.*,
  525 U.S. 33 (1998).................................................................................15

*Milligan v. Salamone*,
  2019 WL 1208999 (W.D. Tex. Mar. 14, 2019)................................23

*Miranda v. Nat'l Postal Mail*,
  219 F. App'x 340 (5th Cir. 2007) ....................................................9, 18

*Montplaisir v. Leighton*,
  875 F.2d 1 (1st Cir. 1989)......................................................................23

*Peterson v. Kennedy*,
  771 F.2d 1244 (9th Cir. 1985) .....................................................12, 14, 15, 22

*Porter v. NFL Players Ass'n*,
   2022 WL 2666060 (6th Cir. July 11, 2022) ........................................................8

*Reece v. Hous. Lighting & Power Co.*,
   79 F.3d 485 (5th Cir. 1996) ...............................................................................21

*Richardson v. United Steelworkers of Am.*,
   864 F.2d 1162 (5th Cir. 1989) .............................................................................9

*Ross v. Runyon*,
   156 F.R.D. 150 (S.D. Tex. 1994)........................................................................19

*Sawyer v. Am. Postal Workers Union*,
   2011 WL 6029925 (N.D. Tex. Nov. 30, 2011) ...................................................14

*Sherwin v. Indianapolis Colts, Inc.*,
   752 F. Supp. 1172 (N.D.N.Y. 1990)...................................................................21

*Simms v. Loc. 1752, Int'l Longshoremen Ass'n*,
   838 F.3d 613 (5th Cir. 2016) ...............................................................................8

*Smith v. Houston Oilers*,
   87 F.3d 717 (5th Cir. 1996) ...........................................................................8, 21

*Spellacy v. Airline Pilots*,
   156 F.3d 120 (2d Cir. 1998) ...............................................................................11

*Sport Supply Grp., Inc. v. Columbia Cas. Co.*,
   335 F.3d 453 (5th Cir. 2003) .............................................................................23

*Tenaris Bay City Inc. v. Ellisor*,
   718 S.W.3d 193 (Tex. 2025) ..............................................................................23

*Trial v. Atchison, Topeka & Santa Fe Ry.*,
   896 F.2d 120 (5th Cir. 1990) .............................................................................10

*United Steelworkers of Am., AFL-CIO-CLC v. Rawson*,
   495 U.S. 362 (1990)......................................................................................11, 19

*United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*,
   363 U.S. 574 (1960)............................................................................................20

vi

*Vaughn v. Air Line Pilots Ass'n, Int'l*,
604 F.3d 703 (2d Cir. 2010) ..............................................................11

*Walker v. Hous. Fed'n of Teachers/Aft Loc. 2415*,
2016 WL 1275057 (S.D. Tex. Mar. 31, 2016) ....................................19

*Waterman v. Transport Workers' Union*,
176 F.3d 150 (2d Cir. 1999) ..............................................................22

*Weinberg v. NFL Players Ass'n*,
No. 3:06-CV-2332-B (N.D. Tex. June 14, 2007) ..................................8

*Williams v. AT&T, Inc.*,
2009 WL 938495 (S.D. Tex. Apr. 6, 2009) ........................................14

*Won Pak v. Harris*,
313 S.W.3d 454 (Tex. App. 2010, pet. denied) ..................................25

**Statutes**

29 U.S.C. § 159(a) .......................................................................*passim*

29 U.S.C. § 185 ...........................................................................*passim*

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) ........................................................................1

Defendants National Football League Players Association (the "NFLPA" or the "Union") and Andrew Morris hereby respectfully move this Court, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss, with prejudice, all counts asserted against them in Plaintiff Tyus Bowser's Complaint (ECF No. 1-3).

## PRELIMINARY STATEMENT

Former National Football League ("NFL") player Tyus Bowser brought this suit against his union, the NFLPA, and one of its Staff Counsel, Andrew Morris, after Mr. Bowser's grievance against the Baltimore Ravens ("Grievance") did not proceed to arbitration. While the NFLPA indisputably owes Mr. Bowser a duty of fair representation, the NFLPA's decision-making about whether and how to advance grievances under the collective bargaining agreement with the NFL ("CBA") is owed substantial deference. Indeed, it is black letter law that the duty of fair representation affords unions vast flexibility in their handling of members' grievances, with only the most nefarious and intentional misconduct constituting a breach. The Complaint's allegations do not come close to stating any such claim; rather, they undermine it. As for the Complaint's other two causes of action—negligence/legal malpractice and breach of fiduciary duty—they are merely different legal labels for the same alleged disagreements about how the NFLPA handled the Grievance and are thus preempted under federal law. Each claim should be dismissed on these and additional grounds.

1

*First*, Mr. Bowser's duty of fair representation claim is untimely, filed several months late under even the most generous interpretation of the allegations. And even if timely filed, the claim fails because it does not plead plausible facts that the NFLPA's alleged conduct satisfies the high "arbitrary, discriminatory, or bad faith" standard that applies to duty of fair representation claims. The Complaint cannot overcome Supreme Court precedent that judicial review of a union's conduct vis-a-vis its members—including in handling or dismissing grievances such as Mr. Bowser's—is limited and "highly deferential." Nor can it satisfy the demanding legal standard to plausibly allege a causal relationship between the NFLPA's conduct and Mr. Bowser's purported injury.

*Second*, Mr. Bowser's state law claims for negligence, legal malpractice, and breach of fiduciary duty fail because they are preempted by federal labor law several times over. The state claims concern Defendants' duties and relationship with Mr. Bowser as a union member—a subject exclusively governed and preempted by the National Labor Relations Act ("NLRA"). Further, each state law claim would require substantial analysis of the CBA—including the collectively-bargained form NFL Player Contract and CBA arbitration precedents—which results in preemption under Section 301 of the Labor-Management Relations Act ("LMRA").

*Finally*, even if Mr. Bowser's state law claims were not preempted, they would still fail. The legal malpractice claim against Mr. Morris is barred by Section

2

301, which immunizes individual union employees against such claims. This cause of action also fatally fails to identify how Mr. Morris caused Mr. Bowser's alleged damages. As for the negligence claim, the Complaint likewise fails to plausibly allege—and Mr. Bowser cannot plausibly allege—how the NFLPA's alleged conduct caused him any harm. Finally, the breach of fiduciary duty claim merely repackages the other claims without remedying their collective shortcomings and thus fails for the same reasons.

Defendants respectfully submit that the Complaint should be dismissed with prejudice.

## BACKGROUND

### I.      The NFLPA and the NFL Player Contract

Pursuant to Section 9(a) of the NLRA (29 U.S.C. § 159(a)), the NFLPA is the exclusive collective bargaining representative of all present and future NFL players. Compl. ¶ 4; *Clarett v. NFL*, 369 F.3d 124, 127 (2d Cir. 2004). The National Football League Management Council ("NFLMC") is the exclusive bargaining representative of the NFL teams (or "Clubs"). *See* CBA at Preamble.[1] And the CBA governs the terms of employment of all past and present NFL players. Under Section 301 of the

---

[1] The CBA is referenced throughout the Complaint. *See, e.g.*, Compl. ¶¶ 18, 29, 38. On a motion to dismiss, the Court can consider and take judicial notice of documents that are attached or referred to in the complaint. *See Jefferally v. Barr*, 2019 WL 3935977, at *1 (S.D. Tex. Aug. 20, 2019). The CBA is also publicly available on the NFLPA's website. Relevant excerpts are attached as Ex. A.

LMRA (29 U.S.C. § 185), analysis of any collective bargaining agreement is the sole jurisdiction of federal courts and federal labor law. The CBA requires all NFL players to sign the "NFL Player Contract" appended to the CBA. CBA Art. 4, § 1.

## II.    The "Nonfootball Injury or Illness" List and the Grievance Procedure

A Club may place a player who suffers an injury unrelated to football on the "Nonfootball Injury or Illness" list ("N-F/I"). Compl. ¶¶ 11–13; CBA Art. 20, § 3. Under the CBA, that player "will not be entitled to any compensation under his contract while on such list . . . ." CBA Art. 20, § 3. By contrast, a player who suffers a football-related injury is usually entitled to his compensation. *See* CBA Art. 4, § 9.

Under Article 43 of the CBA, a player's placement on the N-F/I list may be challenged through a "Non-Injury Grievance"—pursued by either the NFLPA or the player—against a Club. *See* CBA Art. 43, § 1. Such a Non-Injury Grievance must be initiated

> within fifty (50) days from the date of the occurrence or non-occurrence upon which the grievance is based, or within fifty (50) days from the date on which the facts of the matter became known or reasonably should have been known to the party initiating the grievance, whichever is later.

CBA Art. 43, § 2.

The Complaint alleges that there is "extensive NFL arbitration precedent" under the CBA—known in labor law as "law of the shop"—interpreting the statute of limitations for initiating a Non-Injury Grievance. Compl. ¶ 29. Per Plaintiff,

4

under this precedent, the timeliness requirements for initiating grievances are strictly construed and an untimely grievance may be dismissed. *Id.*; CBA Art. 43, § 2.

### III.    Plaintiff's Grievance Against the Ravens

Plaintiff Tyus Bowser is a former NFL player for the Baltimore Ravens. Compl. ¶ 10. Mr. Bowser signed an NFL Player Contract with the Ravens for the 2021–2024 seasons, but he suffered an injury to his right knee during the 2023 offseason. *Id.* ¶¶ 10–11. As a result of his knee injury, and subsequent surgery, Mr. Bowser was unable to play during the 2023 season. *Id.* ¶¶ 12–13.

The Ravens characterized Mr. Bowser's injury as non-football and placed him on the Active/N-F/I list on July 21, 2023, and the Reserve/N-F/I list on August 29, 2023. *Id.* ¶ 13. Six months later, around February 24, 2024, Mr. Bowser alleges that he learned a localized staph infection, contracted from treatment provided by the Ravens, caused his knee issues. *Id.* ¶ 15. Mr. Bowser alleges that his injury was thus football-related and he should not have been placed on the N-F/I list. *See id.*

Mr. Bowser retained counsel to file a medical malpractice claim based on the treatment he received from the Ravens. *See id.* ¶ 19. Mr. Bowser's counsel also coordinated with the NFLPA to avoid issues with his pending medical malpractice claim, and the NFLPA (through then-Staff Counsel Todd Flanagan) filed a grievance on April 4, 2024, challenging the Ravens' placement of Mr. Bowser on the N-F/I list. *Id.* ¶¶ 18–20. In response, the NFLMC maintained the Grievance was untimely

because it was not initiated within 50 days of Mr. Bowser's placement on the NF/I list—which had occurred over 250 days earlier—as the CBA requires.  *Id.* ¶ 21.

The NFLMC later filed a motion to dismiss the Grievance, again arguing that it was untimely.  *Id.* ¶ 29.  Plaintiff alleges that the NFLMC "cited extensive NFL arbitration precedent strictly enforcing the timeliness provisions, including cases where grievances were dismissed as untimely even when filed only two days late."  *Id.*  Thereafter, the NFLPA, through NFLPA Staff Counsel Andrew Morris, allegedly dismissed or withdrew Mr. Bowser's Grievance before the scheduled May 2025 hearing, without consulting Mr. Bowser.  *Id.* ¶¶ 29–30.  That is the sum total of Defendants' alleged misconduct.  *See generally* Compl.

**IV.    Mr. Bowser Files Suit Against the NFLPA and Mr. Morris**

On March 2, 2026, Mr. Bowser sued the NFLPA and Mr. Morris in the 215th Judicial District Court in Harris County, Texas.  Compl.  Defendants removed the case to this Court on March 25, 2026.  ECF No. 1.  The crux of Mr. Bowser's Complaint is the NFLPA's alleged decision not to pursue the Grievance through arbitration.  *See, e.g.*, Compl. ¶ 34 (alleging the NFLPA breached its duty of fair representation by "[d]ismissing, abandoning, or otherwise failing to prosecute Bowser's Grievance"); ¶ 39 (alleging the NFLPA and Mr. Morris committed negligence and/or legal malpractice by "[d]ismissing, abandoning, or failing to prosecute the Grievance without client authorization or consent"); ¶ 44 ("Defendants

6

breached their fiduciary duties to [Mr.] Bowser by unilaterally postponing, delaying, and ultimately abandoning or dismissing his Grievance without authorization").

Mr. Bowser's putative entitlement to recovery must necessarily be rooted in the Grievance being "meritorious," meaning he would have prevailed had the NFLPA pursued it to completion. *See id.* ¶ 40. Otherwise, as the Complaint implicitly acknowledges, there could be no harm from Defendants not pursuing a Grievance that was going to fail.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This means that a plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555–56 (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are therefore insufficient to withstand a motion to dismiss. *Iqbal*, 556 U.S. at 678. A court need not accept a plaintiff's legal conclusions as true, *see id.*, nor must a court presume the veracity of legal conclusions that are couched as factual allegations. *See Twombly*, 550 U.S. at 555. Further, where the "complaint as amended would be subject to dismissal,"

7

granting leave to amend is futile and dismissal with prejudice is proper. *Aldridge v. Miss. Dep't of Corr.*, 990 F.3d 868, 878 (5th Cir. 2021) (citations omitted).

Courts routinely dismiss duty of fair representation claims for failure to state a claim because the legal standard—requiring plausible allegations of "arbitrary," "discriminatory," or "bad faith" conduct—is so daunting. *Simms v. Loc. 1752, Int'l Longshoremen Ass'n*, 838 F.3d 613, 621 (5th Cir. 2016); *see also Landry v. The Cooper/T. Smith Stevedoring Co.*, 880 F.2d 846, 852 (5th Cir. 1989); *Johnson v. NFL Players Ass'n*, 2018 WL 8188558, at *11, *17 (S.D.N.Y. Oct. 3, 2018), *aff'd*, 820 F. App'x 51 (2d Cir. 2020) (granting the NFLPA's motion to dismiss duty of fair representation claims brought by player). Courts also routinely dismiss state law claims brought against labor unions and their employees as preempted under the NLRA and/or the LMRA. *See, e.g.*, *Porter v. NFL Players Ass'n*, 2022 WL 2666060, at *3 (6th Cir. July 11, 2022) (tortious interference claims preempted under the NLRA because they concern plaintiff's ability to represent union members, and that is a subject within the NFLPA's control under federal labor law); *Dickey v. NFL*, 2018 WL 4623061, at *9 (D. Mass. Sept. 26, 2018), *aff'd*, 2020 WL 6819135 (1st Cir. Feb. 13, 2020) (finding NLRA and LMRA preemption of state law challenges against the NFLPA); *Smith v. Houston Oilers*, 87 F.3d 717, 718–21 (5th Cir. 1996) (affirming dismissal of state law tort claims brought by NFL players because they were preempted by Section 301 of the LMRA); Hr'g Tr. 48:6–13, *Weinberg v. NFL*

8

*Players Ass'n*, No. 3:06-CV-2332-B (N.D. Tex. June 14, 2007), excerpts of which are filed hereto as Ex. B (claims "preempted due to the presence of the NFLPA and the regulations and the LMRA"); *Black v. NFL Players Ass'n*, 87 F. Supp. 2d 1, 4, 4 n.4 (D.D.C. 2000) (tortious-interference claim was "inextricably intertwined" with the NFLPA's agent regulations and thus preempted under Section 301).

## ARGUMENT

### I.   PLAINTIFF FAILS TO PLAUSIBLY ALLEGE A DUTY OF FAIR REPRESENTATION CLAIM AGAINST THE NFLPA.

In Count 1, Mr. Bowser asserts that the NFLPA violated its duty of fair representation under the NLRA.  Compl. ¶¶ 33–34.  That claim should be dismissed because it (i) is untimely, (ii) fails to plausibly allege facts that the NFLPA's conduct was "arbitrary," "discriminatory," or in "bad faith," and (iii) fails to plausibly allege facts that the NFLPA's conduct injured Plaintiff.

### a.   The Breach of Duty of Fair Representation Claim Is Time-Barred.

As a preliminary matter, Plaintiff's duty of fair representation claim is time-barred under the governing six-month statute of limitations, which applies to both hybrid claims under Section 301 of the LMRA and standalone duty of fair representation claims. *See DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 165, 169–170 (1983); *Miranda v. Nat'l Postal Mail*, 219 F. App'x 340, 345 (5th Cir. 2007); *Richardson v. United Steelworkers of Am.*, 864 F.2d 1162, 1167 (5th Cir. 1989).

9

This action—filed on March 2, 2026—is outside the six-month limitations period, which requires conduct on or after September 2, 2025.  However, the most recent alleged event underpinning the NFLPA's purported breach took place before May 20, 2025, when the NFLPA allegedly abandoned or withdrew the Grievance before the rescheduled hearing.  Compl. ¶¶ 29–30.  Therefore, even under the most lenient interpretation of the allegations, Mr. Bowser's duty of fair representation claim accrued no later than May 20, 2025—more than nine months before he filed this action—when the hearing did not happen and Mr. Bowser thus knew or should have known that the NFLPA was not pursuing the Grievance.  *See Lee v. Cytec Indus., Inc.*, 460 F.3d 673, 677 (5th Cir. 2006) (a claimant "had to sue within six months of the time it became obvious that the union had rejected his claim"); *Trial v. Atchison, Topeka & Santa Fe Ry.*, 896 F.2d 120, 124 (5th Cir. 1990) (the period "begins to run when the claimants discover, or in the exercise of reasonable diligence should discover, the acts that form the basis of their duty of fair representation claim"); *Bird v. Nat'l Aeronautics & Space Agency*, 2022 WL 20717274, at *3 (S.D. Tex. Jan. 18, 2022) (Palermo, J.) (same).  Count 1 is therefore untimely and should be dismissed with prejudice.  *See Foster v. Jesel*, 164 F.4th 401, 405 (5th Cir. 2026).

### b.  Even If Not Time-Barred, Plaintiff Fails to Allege That the NFLPA Breached Its Duty of Fair Representation.

The duty of fair representation claim independently fails because the Complaint does not plausibly allege a breach.  Breaches occur only when a union

10

engages in conduct that is "arbitrary," "discriminatory," or in "bad faith." *DelCostello*, 462 U.S. at 164. A union's conduct is arbitrary only if it "is so far outside a wide range of reasonableness as to be irrational." *Air Line Pilots Ass'n v. O'Neill*, 499 U.S. 65, 67 (1991). A union's actions are discriminatory if "substantial evidence" indicates that discriminatory conduct was "intentional, severe, and unrelated to legitimate union objectives." *Amalgamated Ass'n of St., Elec. Ry. & Motor Coach Emps. of Am. v. Lockridge*, 403 U.S. 274, 301 (1971). And bad faith includes "fraud, dishonesty, and other intentionally misleading conduct," and requires proof that the union acted with "an improper intent, purpose, or motive." *Spellacy v. Airline Pilots*, 156 F.3d 120, 126 (2d Cir. 1998). Allegations of mere negligence do not state a claim for breach of the duty of fair representation. *United Steelworkers of Am., AFL-CIO-CLC v. Rawson*, 495 U.S. 362, 372–73 (1990).

In addition to showing that the NFLPA's processing of the Grievance was "arbitrary, discriminatory, or in bad faith," Mr. Bowser must also "demonstrate a causal connection between the union's wrongful conduct and [his] injuries." *Vaughn v. Air Line Pilots Ass'n, Int'l*, 604 F.3d 703, 709–10 (2d Cir. 2010) (quoting *Spellacy*, 156 F.3d at 126). The Complaint's allegations, even if accepted as true, cannot meet any of those standards.

### i. *Plaintiff Has Not Alleged Any Conduct that Is Arbitrary, Discriminatory, or in Bad Faith.*

Courts have "held consistently that unions are not liable for good faith, non-

11

discriminatory errors of judgment made in the processing of grievances." *Peterson v. Kennedy*, 771 F.2d 1244, 1254 (9th Cir. 1985) (collecting cases). Judicial review of duty of fair representation claims is "highly deferential, recognizing the wide latitude that [unions] need for the effective performance of their bargaining responsibilities." *O'Neill*, 499 U.S. at 78. Indeed, due to the "wide latitude" afforded to unions, "a plaintiff's obligation to plead sufficient conduct to state a claim for breach of the D[uty of] F[air] R[epresentation] imposes 'an enormous burden.'" *Dillard v. Seiu Loc. 32BJ*, 2015 WL 6913944, at *4 (S.D.N.Y. Nov. 6, 2015) (citation omitted). And "allegations of a complaint alleging the breach of a union's duty of fair representation must contain more than conclusory statements alleging discrimination." *Harris v. Am. Postal Workers Union*, 198 F.3d 245, at *3 (6th Cir. 1999). Therefore, claims—like Plaintiff's—that challenge "the union's judgment as to how best to handle a grievance" consistently fail. *Peterson*, 771 F.2d at 1254.

Despite formulaic recitations that the NFLPA's alleged "conduct was arbitrary, discriminatory, and/or in bad faith," the Complaint never substantiates how the NFLPA's conduct was supposedly any of those things. Compl. ¶ 35. Those omissions are dispositive. The Complaint also undermines its conclusory allegations by averring that, before the NFLPA allegedly dismissed or abandoned the Grievance, the NFLMC argued that the Grievance was untimely and submitted "extensive NFL

arbitration precedent strictly enforcing the [CBA's] timeliness provisions." *Id.* ¶¶ 21, 29. In other words, the Complaint *affirmatively alleges* a *non*-arbitrary, *non*-discriminatory, *non*-bad faith explanation for why the NFLPA allegedly chose not to pursue the Grievance, *i.e.*, it was untimely.

*Johnson v. NFL Players Ass'n* is instructive. 2018 WL 8188558, at *1. There too an NFL player sued the NFLPA for allegedly breaching its duty of fair representation based on its alleged mishandling of a grievance. *Id.* But in that case, the plaintiff had at least alleged *some* facts to try to support his assertion of arbitrary, discriminatory, or bad faith conduct: namely, that the player had "publicly complained about the inadequacy of the union's representation" and thus the NFLPA allegedly retaliated by mishandling his grievance. *Id.* at *12. Even then, the court held that "the bare and conclusory allegation" that the NFLPA "manifested bad faith" did not rise above *Twombly*'s plausibility threshold. *Id.* at *13. The Second Circuit affirmed. *Johnson*, 820 F. App'x at 57. Here, Plaintiff alleges zero facts that plausibly suggest the NFLPA's conduct was "unrelated to legitimate union objectives," or based in fraud or dishonesty. *Lockridge*, 403 U.S. at 299, 301. On the contrary, Mr. Bowser himself alleges that the Grievance was challenged by "extensive NFL arbitration precedent strictly enforcing the [CBA's] timeliness provisions." *See* Compl. ¶¶ 21, 29.

Rather than conduct that was arbitrary, discriminatory, or taken in bad faith,

13

the heart of Plaintiff's claim is his apparent disagreement with the NFLPA's decision-making, and an allegation that the NFLPA acted "without his knowledge or authorization." *Id.* ¶ 34. But "[w]ithout more specific details and facts suggesting more than merely [Mr. Bowser's] disagreement, [his duty of fair representation] claim against the union does not meet Rule 8 standards." *See Jackson v. U.S. Postal Serv.*, 2025 WL 2405213, at *9 (N.D. Tex. June 30, 2025). Ultimately it "is for the union . . . to decide whether and in what manner a particular grievance should be pursued." *Peterson*, 771 F.2d at 1254; *Bird*, 2022 WL 20717274, at *4 ("An employee has no absolute right to have his grievance taken to arbitration . . . or to any other level of the grievance process . . . ."). And in exercising that discretion, a "[u]nion is not required to process all of [a p]laintiff's grievances and is not required to inform or allow the employee to participate." *Sawyer v. Am. Postal Workers Union*, 2011 WL 6029925, at *4 (N.D. Tex. Nov. 30, 2011).

Moreover, the NFLPA's "strategic decisions" (Compl. ¶ 23) fall well within its discretion and are protected under the NLRA. *See Landry,* 880 F.2d at 852 ("A union retains considerable discretion . . . in processing the grievances of its members."); *Williams v. AT&T, Inc.*, 2009 WL 938495, at *23 (S.D. Tex. Apr. 6, 2009) ("A union's decision or strategy on how to present a grievance does not give rise to a breach of the duty of fair representation unless it is arbitrary or irrational.").

The NFLPA has "substantial discretion" to decide not only "whether" to file

14

a grievance, but also "how far a grievance should be pursued." *Bache v. Am. Tel. & Tel.*, 840 F.2d 283, 289 (5th Cir. 1988); *Davis v. United Steel, Paper & Forestry, Rubber*, 750 F. App'x 335, 339 (5th Cir. 2018) ("A union has considerable discretion in processing grievances and in deciding whether and how far a grievance should be pursued, and their actions are judged by a wide range of reasonableness."). As such, the NFLPA's alleged decision to dismiss or abandon the Grievance is entitled to substantial deference. *Davis*, 750 F. App'x at 339. And here, the Complaint identifies a reason not to pursue the Grievance. Compl. ¶¶ 21, 29.

At its core, the Complaint asks this Court to impermissibly "attempt to second-guess a union's judgment." *Peterson*, 771 F.2d at 1254. But even if the NFLPA erred in allegedly dismissing the Grievance or not updating Plaintiff, that does not give rise to a duty of fair representation claim. *Id.* at 1255–56 ("Although the union's representatives may have erred in initially advising [plaintiff] to file an injury grievance and in failing to recognize its mistake in time to file a non-injury grievance in its stead, we are unwilling to subject unions to liability for such errors in judgment."); *Marquez v. Screen Actors Guild, Inc.*, 525 U.S. 33, 45–46 (1998) ("This 'wide range of reasonableness' gives the union room to make discretionary decisions and choices, even if those judgments are ultimately wrong.").

With nothing more than its barebone and conclusory allegations that the NFLPA's "conduct was arbitrary, discriminatory, and/or in bad faith" (Compl. ¶ 35),

15

Plaintiff's duty of fair representation claim warrants dismissal.

### ii. *Plaintiff Has Not Alleged Any Causal Connection Between the NFLPA's Conduct and His Injuries.*

The duty of fair representation claim fails on yet another independent ground: the Complaint does not and cannot plausibly plead a causal connection between the NFLPA's alleged conduct and Mr. Bowser's claimed injuries. Said differently, even if Mr. Bowser had timely and adequately alleged that the NFLPA's conduct was arbitrary, discriminatory, or in bad faith, "he must also show that the breach contributed to the erroneous outcome of the . . . proceedings." *Carr v. Airline Pilots Ass'n, Int'l*, 866 F.3d 597, 602 (5th Cir. 2017). The Complaint falls short here, too.

Plaintiff does not allege that dismissal of his Grievance was "erroneous." Rather, he alleges that the NFLPA made decisions "without his knowledge or authorization." Compl. ¶ 34. Otherwise, the Complaint alleges that the NFLMC argued that the Grievance was untimely, that "extensive NFL arbitration precedent" supported that position, and that the CBA's statute of limitations is strictly applied. *Id*. ¶ 29. The Complaint does not even allege that the NFLMC's arguments were wrong—although differences of opinion about the merits of a particular legal argument are not grounds for a duty of fair representation claim anyway. *Supra* 14–15.

Moreover, to succeed on a duty of fair representation claim, any negligence by the union must "be the solitary and indivisible cause of the complete

16

extinguishment of an employee's grievance rights." *Eichelberger v. N.L.R.B.*, 765 F.2d 851, 855 (9th Cir. 1985). Therefore, even if the NFLPA was negligent, that negligence must be the *sole* cause of Plaintiff's alleged harm. The fact—which the Complaint notably ignores—that Mr. Bowser could have filed or pursued the Grievance on his own disposes of the argument that the NFLPA is the sole cause of an outcome. *See generally* Compl.; *see also* CBA Art. 43, § 2 ("[a] grievance may be initiated by **a player**. . . or the NFLPA") (emphasis added). *Johnson* is again instructive. As that court observed, "[w]hile establishing causation is relatively straightforward in a case where the union reserved the *exclusive* right to pursue grievances, an employee faces a higher burden where, as here, the employee was able to pursue his claim directly, rather than relying wholly upon the union." *Johnson*, 2018 WL 8188558, at *11 (emphasis in original). As in *Johnson*, Mr. Bowser had the opportunity to bring the Grievance on his own—he even hired personal counsel to represent him. Compl. ¶ 18. The Complaint cannot plausibly allege that the NFLPA's conduct resulted in an erroneous outcome for the Grievance when Mr. Bowser could rely on his own counsel to pursue it, particularly when the Complaint alleges that Mr. Bowser's own counsel was actively involved in the Grievance and communicated with the NFLPA throughout the process. *Id.* ¶¶ 19, 25.

Because the Complaint fails to plausibly allege that the NFLPA's conduct resulted in an erroneous outcome for his Grievance, it has not stated a duty of fair

17

representation claim.

## II. PLAINTIFF'S STATE LAW CLAIMS SHOULD BE DISMISSED BECAUSE THEY ARE PREEMPTED BY FEDERAL LABOR LAW.

Plaintiff's state law claims—negligence/legal malpractice (Count 2) and breach of fiduciary duty (Count 3)—must be dismissed because they are preempted both by the NLRA and by Section 301 of the LMRA.

### a. Plaintiff's State Law Claims Are Preempted Under the NLRA.

Both of Plaintiff's state law negligence/legal malpractice and breach of fiduciary duty claims are preempted by the NLRA. The duty of fair representation is a duty implied in the NLRA. *See, e.g.*, *Ford Motor Co. v. Huffman*, 345 U.S. 330, 338–39 (1953); *Miranda*, 219 F. App'x at 343. Defendants' alleged misconduct arises from the NFLPA's role as Mr. Bowser's collective bargaining representative during the Grievance process established under the CBA (Compl. ¶¶ 38, 43), and thus Counts 2 and 3 must be treated as part of his duty of fair representation claim. *See Miranda*, 219 F. App'x at 343 ("the duty allegedly breached by the Defendants arises from their status as [plaintiff's] collective bargaining representatives, thus compelling the conclusion that [plaintiff's] claims are also properly characterized as duty of fair representation claims.").

In other words, because Plaintiff's state law claims indisputably challenge the NFLPA's representation of him ***as a Union member***, they are preempted by the

18

NLRA and mooted.[2]  *See, e.g., Walker v. Hous. Fed'n of Teachers/Aft Loc. 2415*, 2016 WL 1275057, at *6 (S.D. Tex. Mar. 31, 2016) (claim against a union "must be a claim for a breach of its duty of fair representation, implied by the NLRA," which "is the only legally cognizable claim [plaintiff] can assert against the union, and [] supersedes or moots" state law claims).

### b.  The LMRA Also Preempts Plaintiff's State Law Claims.

Independently, state law claims requiring substantial analysis of a collective bargaining agreement are preempted under Section 301 of the LMRA.  *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393–94 (1987); *Black*, 87 F. Supp. 2d at 4 (similar). If a state law claim arises out of a collective bargaining agreement, "the application of state law [] is pre-empted and federal labor-law principles [] must be employed to resolve the dispute."  *Lingle v. Norge Div. of Magic Chef*, 486 U.S. 399, 406 (1988); *see also Ross v. Runyon*, 156 F.R.D. 150, 159 (S.D. Tex. 1994) (dismissing negligence claim "intertwined with the application of the substantive provisions and grievance procedures" in the collective bargaining agreement).

Plaintiff's state law claims are preempted because each is "substantially

---

[2] To find otherwise would subvert the very nature of a duty of fair representation claim—where mere negligence is insufficient to find a union liable for such conduct. *See Rawson*, 495 U.S. at 372–73; *Connally v. Transcon Lines*, 583 F.2d 199, 203 (5th Cir. 1978).  Plaintiff cannot pursue claims that impose higher standards on the NFLPA outside of its duty of fair representation based on its conduct as his union representative.

19

dependent on analysis" of the CBA. *Caterpillar Inc.*, 482 U.S. at 394. Both arise from Defendants' alleged mishandling of the Grievance and the scope of their duties in pursuing it. Compl. ¶¶ 38–39, 43–44. But to determine whether Defendants acted properly, improperly, or somewhere in between necessarily requires a detailed analysis of the CBA. *See Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985).

For example, this Court or a jury would have to consider the timeliness of the Grievance as a threshold issue—if it was untimely, then the NFLPA did not violate any duty to Mr. Bowser by allegedly failing to pursue it. *See* Compl. ¶¶ 21, 29. That would require analysis of the CBA's statute of limitations, when a claim against the Ravens accrued under the CBA, and whether the Grievance was filed within the CBA-mandated limitations period under the "extensive NFL arbitration precedent" cited by the NFLMC. Compl. ¶ 29. Such "law of the shop" is part-and-parcel of the CBA, and its analysis necessitates preemption. *See United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 580–82 (1960) ("the industrial common law—the practices of the industry and the shop—is equally a part of the collective bargaining agreement although not expressed in it").

Further, even if the Grievance were timely, it would also have to be "meritorious" for Plaintiff to prevail on either of his state law claims. That determination would also be "substantially dependent on analysis" of the CBA (including the incorporated Player Contract) and arbitration precedent. Compl.

20

¶¶ 40, 45. *See Reece v. Hous. Lighting & Power Co.*, 79 F.3d 485, 487 (5th Cir. 1996) (state law claims are preempted under Section 301 if they "require 'interpretation' of the CBA"); *Sherwin v. Indianapolis Colts, Inc.*, 752 F. Supp. 1172, 1177–78 (N.D.N.Y. 1990) (finding that the "standard player agreement . . . is effectively incorporated by reference" in the NFL-NFLPA CBA and state law claims requiring interpretation of the CBA are preempted). Determining the merits of Plaintiff's Grievance would at least require analysis of: (i) the rights and obligations under his collectively bargained Player Contract with the Ravens (Compl. ¶¶ 10, 15); (ii) the Ravens' CBA responsibilities for medical treatment (*id.* ¶ 12); and (iii) whether the CBA entitled the Ravens to place Mr. Bowser on the NF/I list (*id.* ¶ 13).

Ultimately, Plaintiff's claims arise from his belief that Defendants mishandled his Grievance and are thus preempted. *Baltrusaitis v. Int'l Union*, 133 F.4th 678, 702 (6th Cir. 2025) (Thapar, J., concurring) ("The plaintiffs' claimed right—the right to have their grievances fairly processed—comes from the collective bargaining agreement. So section 301 preempts any state-law claim to vindicate that right."); *Oilers*, 87 F.3d at 718–21 (NFL players' state law claims preempted); *Atwater v. NFL Players Ass'n*, 626 F.3d 1170, 1179–85 (11th Cir. 2010) (retired NFL players' state law claims preempted).

### III. EVEN IF NOT PREEMPTED, PLAINTIFF HAS FAILED TO STATE AN ACTIONABLE CLAIM FOR NEGLIGENCE, MALPRACTICE, OR A FIDUCIARY BREACH.

Preemption aside, the Complaint does not plausibly plead state law claims.

#### a. Plaintiff Cannot Allege Any Negligence Against the NFLPA or Legal Malpractice Against Mr. Morris.

Plaintiff's negligence/legal malpractice claim—brought against the NFLPA and Mr. Morris respectively—fails to establish requisite elements for such a claim.

##### i. *Plaintiff's Legal Malpractice Claim Against Mr. Morris Fails*

The legal malpractice claim against Mr. Morris is barred because Section 301 "immunizes attorneys employed by or hired by unions to perform services related to a collective bargaining agreement from suit for malpractice." *Carino v. Stefan*, 376 F.3d 156, 162 (3d Cir. 2004); *Atkinson v. Sinclair Refining Co.*, 370 U.S. 238, 246–49 (1962) (union's agents could not be held liable for violations of a contract for which the union itself would be liable); *Waterman v. Transport Workers' Union*, 176 F.3d 150, 150 (2d Cir. 1999) ("union's attorneys may not be sued by an individual union member for actions taken pursuant to a collective bargaining agreement"); *Arnold v. Air Midwest, Inc.*, 100 F.3d 857, 862 (10th Cir. 1996) (similar).

Mr. Bowser's available challenge to the representation he received from the NFLPA and Mr. Morris during the Grievance is a duty of fair representation claim—not legal malpractice. *See Peterson*, 771 F.2d at 1259 ("[U]nion members are [not] without a remedy when attorneys . . . fail to process grievances adequately. If an

22

attorney's conduct falls within the 'arbitrary, discriminatory or bad faith' test. . . the union member may sue the union for breach of the duty of fair representation."); *Montplaisir v. Leighton*, 875 F.2d 1, 6–7 (1st Cir. 1989) (explaining that unions are held to the "arbitrary, discriminatory, or in bad faith" standard of care and allowing malpractice claims "would create an anomalous situation in which certain union agents would be held to a far higher standard of care than the union itself.").

Further, the Complaint does not allege how Mr. Morris's alleged conduct (dismissing the Grievance without consulting Plaintiff (Compl. ¶¶ 5, 30))[3] harmed Plaintiff or that the Grievance would have succeeded. *Supra* 11–17. Such a causal connection is a critical element of a legal malpractice claim. *Milligan v. Salamone*, 2019 WL 1208999, at *8 (W.D. Tex. Mar. 14, 2019).

### ii. *Plaintiff's Negligence Claim Against the NFLPA Fails*

Mr. Bowser alleges a separate negligence claim against the NFLPA, which fails for similar reasons: there is no breach of a legal duty or damages proximately resulting from that breach. *Sport Supply Grp., Inc. v. Columbia Cas. Co.*, 335 F.3d 453, 466 (5th Cir. 2003) (citing Texas authorities). Proximate cause requires cause in fact and foreseeability. *Tenaris Bay City Inc. v. Ellisor*, 718 S.W.3d 193, 197 (Tex. 2025). Plaintiff has not alleged any breach by the NFLPA. The Complaint makes the conclusory claim that the NFLPA assumed a "duty to exercise ordinary care and

---

[3] The other alleged conduct pre-dates Mr. Morris's alleged involvement. *Id.* ¶ 39.

professional skill . . . consistent with the standard of care applicable to attorneys handling grievance proceedings under the NFL CBA." Compl. ¶ 38. But it does not allege how the NFLPA's conduct differed from the standard of care—or why *the NFLPA* should be held to "the standard of care applicable to attorneys." *Id.* ¶ 39. Again, the NFLPA is held to a "standard of care" defined by the NLRA and the duty of fair representation.

Plaintiff also cannot establish proximate cause between the handling of the Grievance and any alleged damages. *Supra* 16–17. He only alleges that his "Grievance would have proceeded to a hearing on the merits" "but for" the NFLPA's negligence, and was "meritorious." Compl. ¶ 40. But he had "no absolute right to have his grievance taken to arbitration . . . or to any other level of the grievance process." *Landry*, 880 F.2d at 852.

### b. Plaintiff Has Not Alleged a Breach of Fiduciary Duty Claim Against Either Defendant.

Plaintiff's breach of fiduciary duty claim is another misguided attempt to repackage his duty of fair representation claim in another state law theory. Even if not preempted by federal labor law, it fails.

As discussed above, the breach of fiduciary duty claim—premised on allegations that the NFLPA inadequately handled the Grievance (Compl. ¶¶ 43–44)—is subsumed by the duty of fair representation. Mr. Bowser's "fiduciary-duty claim is either duplicative of the fair-representation claim or preempted" and must

24

be dismissed. *Anderson v. Am. Postal Workers Union*, 2025 WL 2766700, at \*4 n.4 (N.D. Ill. Sep. 26, 2025). Since Plaintiff does not identify any fiduciary duty that the NFLPA owes him "beyond the normal incidents of the union-employee relationship," his claim fails. *Adkins v. Mireles*, 526 F.3d 531, 539 (9th Cir. 2008).

Further, the breach of fiduciary duty claim against Mr. Morris is an improper attempt to "convert" a "professional negligence claim[] against an attorney" into a separate infraction under Texas's "anti-fracturing rule." *Won Pak v. Harris*, 313 S.W.3d 454, 457 (Tex. App. 2010, pet. denied). To pursue a separate breach of fiduciary duty claim, the Complaint "must do more than merely reassert the same claim for legal malpractice under an alternative label"—which it fails to do. *Huerta v. Shein*, 498 F. App'x 422, 427 (5th Cir. 2012) (quotations omitted). Specifically, Plaintiff alleges that Defendants breached their fiduciary duties "by unilaterally postponing, delaying, and ultimately abandoning or dismissing his Grievance without authorization"; "by failing to communicate material developments"; and "by prioritizing [their] own convenience and strategic preferences." Compl. ¶ 44. This same conduct underlies Plaintiff's legal malpractice claim. *Id.* ¶ 39. The Complaint thus fails to "present a claim that goes beyond" the traditional malpractice claim, and the fiduciary duty claim must be dismissed. *Huerta*, 498 F. App'x at 427.

## CONCLUSION

For all these reasons, the Court should dismiss the Complaint with prejudice.

25

Dated: April 27, 2026

Respectfully Submitted,

By:    */s/ Madison K. Haueisen*
      Madison K. Haueisen
      Tex. Bar No. 24115369
      S.D. Tex. Fed No. 3805469
      WINSTON & STRAWN LLP
      800 Capitol St., Suite 2400
      Houston, TX 77002-2925
      Tel: (713) 651-2600
      Fax: (713) 651-2700
      mhaueisen@winston.com

      *Attorney-in-Charge for Defendants*
      *National Football League Players*
      *Association and Andrew Morris*

Of Counsel:

Jeffrey L. Kessler (*pro hac vice*)
David L. Greenspan (*pro hac vice*)
Adam I. Dale (*pro hac vice*)
Gabriela B. Wolk (*pro hac vice*)
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166-4193
Tel: (212) 294-6700
Fax: (212) 294-4700
jkessler@winston.com
dgreenspan@winston.com
aidale@winston.com
gwolk@winston.com

Hannah M. Shankman (*pro hac vice*)
WINSTON & STRAWN LLP
1901 L St NW
Washington, DC 20036-3506
Tel: (202) 282-5000
Fax: (202) 282-5100
hshankman@winston.com

26

*Attorneys for Defendants National
Football League Players Association
and Andrew Morris*

27

## Certificate of Service

I certify that on April 27, 2026, I served upon all counsel of record a true and correct copy of Defendants National Football League Players Association and Andrew Morris's Rule 12(b)(6) Motion to Dismiss Plaintiff's Complaint and Memorandum in Support, by filing them with the Court's CM/ECF system.

*/s/ Madison K. Haueisen*
Madison K. Haueisen

28