# Exhibit C

---

**TYUS BOWSER**

    **AND**

**BALTIMORE RAVENS**

**Pre-Hearing Motion to Bifurcate and Dismiss Grievance**

---

Pursuant to Article 43, Section 5(a) of the 2020 Collective Bargaining Agreement ("CBA"), the NFL Management Council, on behalf of the Baltimore Ravens ("Ravens" or "Club"), hereby moves to bifurcate and dismiss the above-referenced Grievance filed by the NFL Players Association on behalf of former Ravens player Tyus Bowser. *See* Ex. 1 (April 4, 2024 Grievance). The Grievance challenges "the Club's improper placement of Bowser on the NFI [Non-Football Injury] list on July 21, 2023, and August 29, 2023." *Id.* However, the Grievance was not filed until April 4, 2024, well beyond the CBA's 50-day filing requirement. *See* CBA, art. 43, § 2 ("Initiation"). Under well-settled arbitration precedent, the Grievance therefore must be dismissed. As provided by the CBA, the Ravens request a hearing on this motion at least ten days before the merits hearing scheduled for May 20, 2025, at a time convenient for the Arbitrator and parties. *See* CBA, art. 43, § 5(a)(i).

## I.    BACKGROUND

The facts necessary to resolve this motion are straightforward and beyond dispute. Bowser signed an NFL Player Contract with the Ravens on March 20, 2021, covering the 2021 through 2024 NFL seasons. During the 2023 off-season, Bowser informed the Ravens that he had injured his knee while away from the Club.

In July 2023, Bowser notified the Club that he intended to see Dr. Neal ElAttrache, an outside doctor in Los Angeles, for a clinical evaluation and opinion regarding the condition of his knee. Bowser subsequently elected to have surgery performed on his knee by Dr. ElAttrache. The Ravens agreed to pay for the surgery, but informed Bowser at that time that the Club was not assuming responsibility for his injury or the surgery since it was a "non-football-related injury" and reserved all rights under the CBA. *See* Ex. 2 (July 18, 2023 Letter from Eric DeCosta to Tyus Bowser).

Because Bowser's knee injury caused him to be unable to play during the 2023 pre-season, the Ravens placed Bowser on the Non-Football Injury or Illness ("NFI") list on July 21, 2023, and again on August 29, 2023, when he was still unable to play during the upcoming regular season. *See* Ex. 3 (Player Profile). Bowser cannot reasonably dispute that he was aware of his placement on both NFI lists on or shortly after the dates on which the Ravens made the designations, as well as the Club's reasons for doing so—because he was unable to play due to an injury that was not incurred while he was performing services under his NFL Player Contract.

Bowser remained on the NFI list and did not play at all during the 2023 season as a result of his knee injury. Although under no obligation to do so, the Club's medical and training staff assisted Bowser in the rehabilitation of his injury. However, throughout this period, Bowser continued to seek outside opinions and treatment from medical providers of his choosing. *See* Ex. 4 (February 20, 2024 Letter from Eric DeCosta to Tyus Bowser); Ex. 5 (March 1, 2024 Letter from Eric DeCosta to Tyus Bowser). In addition to Dr. ElAttrache, in October 2023, Bowser sought an opinion and treatment for his knee from Dr. Nathan Yokel and continued to see Dr. Yokel for treatment throughout the 2023 season. Ex. 6 (Excerpt from Ravens Trainer's Records). In January 2024, Bowser asked the Club to send medical records to Dr. Walt Lowe in

Houston and in February 2024, Bowser elected to have a second surgery on his right knee with Dr. Lowe. *See* Ex. 4 (February 20, 2024 Letter). At that time, the Club requested copies of Bowser's outside medical records and Bowser refused.

After Bowser failed to respond to the Club's requests, the Club exercised its right to terminate his contract on March 13, 2024.

On April 4, 2024, Bowser filed the instant Grievance claiming his placement on NFI on July 21 and August 29 was "improper." Ex. 1 (Grievance). Bowser further alleges that while undergoing treatment by the Club, he "contracted an infection in his knee" which prevented him "from practicing or playing for the Club for the entire 2023 season." *Id.* Bowser asserts that on February 24, 2024, he "was informed for the first time that his chronic knee issues were caused by a localized staph infection," and further contends that because this alleged infection "was incurred pursuant to [his] obligation to perform services for the Club," his placement on NFI was improper. *Id.*

The NFL Management Council, on behalf of the Club, denied the Grievance in its entirety. Of particular relevance here, the Management Council and the Club asserted that the "claims asserted in the [G]rievance are untimely" and that they "intend to bifurcate this [G]rievance in accordance with Article 43, Section 5(a)(1) of the CBA." Ex. 7 (Answer).

## II. STANDARD OF REVIEW

The CBA's requirements are clear and unambiguous: a non-injury grievance "*must* be initiated within fifty (50) days from the date of the occurrence . . . upon which the grievance is based, or . . . from the date on which the facts of the matter became known or reasonably should have been known to the party initiating the grievance, whichever is later." CBA, art. 43, § 2 (italics added). The plain language of the CBA clearly states that the filing deadline is mandatory,

not permissive. *See Johnson v. Cincinnati Bengals* at 9 (Luskin, 1980) ("The word 'must' [in the timeliness provision] is a mandatory term"). When a grievance is not timely filed, the Arbitrator has no jurisdiction over the matter and must deny the grievance. *See Los Angeles Rams v. Busick* at 16-17 (Kagel, 1992).

Timeliness is a threshold issue to be addressed before evaluating the merits of a grievance. Thus, NFL arbitrators have not hesitated to decide questions of timeliness *before* addressing the merits of the grievance. *See Wilson v. Denver Broncos* at 29 (Townley, 2008); *Ron Brown v. Los Angeles Raiders* at 16 (Volz, 1995) ("The initial question for decision is whether Mr. Brown's injury grievance must be dismissed as untimely."); *Jeffers v. Carolina Panthers* at 7 (Das, 2008) (bifurcating consideration of timeliness and arbitrability of claims); *Glover v. NFL, et. al.,* Hearing Tr. at 127-128, 130 (Bloch, Feb. 28, 2005) (granting bifurcation for a preliminary consideration of whether player had satisfied procedural requirements for noninjury grievance); *Vick v. Atlanta Falcons* (Das, 2008) (oral decision allowing for bifurcation of claims); *Gumina v. New Orleans Saints* at 1 (Wittenberg, 2002). In fact, consistent with this precedent, the current CBA was amended to expressly provide the parties with the right to seek bifurcation and dismissal of a grievance on timeliness grounds. *See* CBA, art. 43, § 5(a); *see also Gordon v. Kansas City Chiefs* at 2 (Kasher, 2014) (bifurcating grievance under analogous provision for injury grievances).

Moreover, arbitrators have strictly adhered to the timeliness provisions of the CBA, refusing to excuse even seemingly minor deviations from the prescribed filing timeline. *See Wilson* at 44 (denying a grievance filed two days late due to untimeliness); *Joyce v. Los Angeles Rams* at 6-7 (Stark, 1980) (approximately 12 days late); *Jeffers* at 16 (dismissing grievance as untimely where 45-day deadline expired even when calculated from latest possible trigger date).

As one arbitrator explained, "[i]t is important to note that procedural questions—particularly those related to timeliness of filing and processing grievances—do <u>not</u> take secondary status to the merits of a case." *Joyce* at 7, n.1 (quoting Arbitrator Scearce) (emphasis in original).

## III. THE GRIEVANCE SHOULD BE DISMISSED AS UNTIMELY

Bowser's Grievance, filed on April 4, 2024, is untimely on its face. The specific claim alleged in the Grievance is that Bowser's placement "on the NFI list on July 21, 2023, and August 29, 2023" was "improper" under the CBA. Ex. 1. Bowser was obviously aware of his placement on the NFI lists on or around the dates on which the Ravens made those designations. He also cannot dispute that he knew the reason why he was placed on the NFI lists—that his inability to play was caused by an injury that was not incurred during the performance of services under his contract with the Club. In fact, Bowser was notified on July 18, 2023 that the Club believed the injury to his right knee was a "non-football-related injury." *See* Ex. 2 (July 18, 2023 Letter). But he did not file this Grievance challenging his alleged "improper" placement on the NFI lists until April 4, 2024—*more than 200 days* after he knew or should have known of the facts giving rise to the claim asserted in the Grievance. Under the plain language of the CBA and well-settled arbitration precedent, the Grievance therefore must be dismissed. *See Wilson* at 44; *Joyce* at 6-7; *Jeffers* at 16.

Bowser's transparent attempt to save his untimely claim by vaguely alleging that his chronic knee issues were due to an infection that he did not learn of until February 2024 is both nonsensical and foreclosed by well-established precedent under the CBA. Obviously, Bowser's allegation that he learned of an infection to his knee *in February 2024* has no bearing on his claim that his placement on the NFI lists the preceding *July and August*, based on the Club's belief that his inability to play was caused by a "non-football" injury, was "improper."

5

Moreover, NFL precedent makes clear that Article 43's limitation "period starts with the [occurrence of the event giving rise to the grievance], not with the acquiring of information about the alleged injury." *Joyce* at 7. That is particularly true where, as here, the player seeks care for his injury from outside medical providers.

For example, in *Bunch v. New York Giants* (Creo, 1997), the arbitrator dismissed a non-injury grievance alleging violations of the CBA based on an injury that had occurred almost three years earlier. The player sought to excuse the delay by claiming the club withheld information regarding his injury, and by arguing that the filing period should not have commenced until he was advised of the true condition of his knee by another doctor. *Id.* at 15. The arbitrator rejected the player's argument and noted that when the player provided his medical records and "placed his care in the hands of an independent doctor of his own choosing," the independent doctor's knowledge was imputed to the player. *Id.* at 20-21. Because the player was "actively participating in his course of medical treatment" by visiting an independent doctor, the player "reasonably should have known the facts which form the basis of his claim." *Id.* at 21.

Similarly, in *Wilson*, Arbitrator Townley dismissed as untimely an analogous non-injury grievance arising out of a football injury. The arbitrator rejected the player's assertion that his delay should be excused because the club withheld information about his medical condition, finding that the player "had to have reasonably known of those 'facts of the matter'" underlying his grievance at the time he consulted with his independent physician. *Id.* at 23-24, 39.

And in *Stevenson v. Houston Texans* (Das, 2013), Arbitrator Das dismissed as untimely a player's claims concerning a shoulder injury allegedly caused during a practice drill prohibited by the CBA, rejecting the player's argument that the grievance was timely because he was unaware that his injury was exacerbated and did not properly heal because of the club's failure to

properly treat him. In doing so, the arbitrator determined that the player was deemed to be on notice of the claim asserted in the grievance once he consulted with a physician of his own choosing and expressed concerns about his shoulder not improving. *Id.* at 24-26.

These decisions are controlling here. Like the players in *Bunch*, *Wilson*, and *Stevenson*, Bowser cannot deny that he consulted with not only one, but multiple independent doctors of his own choosing about his knee issues beginning as early as July 18, 2023, and throughout the 2023 league year—the period when he (vaguely) contends he contracted the infection that he alleges caused his chronic knee issues. Indeed, Bowser underwent surgery with his chosen physician, Dr. ElAttrache, in July 2023—without the Club's authorization—and proceeded to consult with Dr. ElAttrache, Dr. Yokel, and other medical providers throughout the 2023 season. There is thus no question that Bowser was aware that his knee was not healing throughout the 2023 season and was actively participating in the course of his medical treatment with these outside doctors during this time. Accordingly, Bowser's Grievance challenging his placement on the NFI list for the 2023 season is patently untimely and should be dismissed.

## IV.    CONCLUSION

Because Bowser's Grievance is clearly untimely, the Grievance should be dismissed in advance of the merits hearing presently scheduled for May 20, 2025.

Respectfully Submitted,

Meghan Cannella Carroll

_____

Meghan Cannella Carroll
Sean P. Casey
NFL MANAGEMENT COUNCIL
345 Park Avenue
New York, New York 10154