**UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| TYUS BOWSER,<br><br>*Plaintiff*,<br><br>v.<br><br>NATIONAL FOOTBALL LEAGUE PLAYERS ASSOCIATION and ANDREW MORRIS,<br><br>*Defendants*. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 4:26-cv-02384<br><br>ORAL ARGUMENT REQUESTED |

**DEFENDANTS NATIONAL FOOTBALL LEAGUE PLAYERS ASSOCIATION AND ANDREW MORRIS'S AMENDED REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

# TABLE OF CONTENTS

Page

INTRODUCTION ....................1

ARGUMENT ....................1

I. PLAINTIFF HAS NOT ALLEGED A TIMELY OR PLAUSIBLE DUTY OF FAIR REPRESENTATION CLAIM ....................1

A. The Duty of Fair Representation Claim Is Untimely ....................1

1. Plaintiff's Claim Accrued on May 9, 2025 ....................1

2. The Fraudulent Concealment and Tolling Arguments Fail ....................4

3. Obtaining the Grievance File Is Irrelevant to the Timeliness of Plaintiff's Duty of Fair Representation Claim ....................5

B. The Duty of Fair Representation Claim Also Fails to State a Claim ....................8

1. The FAC Does Not Include Plausible Allegations of a Breach ....................8

2. The FAC Does Not Adequately Plead Causation ....................10

II. THE CLAIMS AGAINST MR. MORRIS LIKEWISE FAIL ....................11

A. The Claims Against Mr. Morris Are Barred by Federal Labor Law ....................11

B. The FAC Does Not State a Malpractice or Fiduciary Duty Claim ....................12

III. THE COURT MAY CONSIDER DEFENDANTS' EXHIBITS ....................14

IV. FURTHER AMENDMENT WOULD BE FUTILE ....................15

CONCLUSION ....................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ace Am. Ins. Co. v. Huntsman Corp.*,
255 F.R.D. 179 (S.D. Tex. 2008) ....15

*Albrecht v. Bungalows*,
2026 WL 1847879 (W.D. Tex. Feb. 4, 2026) ....2

*Am. Postal Workers Union*,
374 NLRB No. 92 (2026) ....4

*Arkansas v. Wilmington Tr. Nat'l Ass'n*,
2020 WL 1249570 (N.D. Tex. Mar. 16, 2020) ....11

*Badaiki v. Schlumberger Holdings Corp.*,
512 F. Supp. 3d 741 (S.D. Tex. 2021)....5

*Barrett v. Ebasco Constructors, Inc.*,
868 F.2d 170 (5th Cir. 1989)....6

*Brickley v. Reed*,
2023 WL 2376127 (Tex. App. Mar. 7, 2023)....13, 14

*Caputo v. Nat'l Ass'n of Letter Carriers*,
730 F. Supp. 1221 (E.D.N.Y. 1990)....10

*Carden v. Minton*,
2026 WL 1851869 (Tex. June 26, 2026) ....13

*Carr v. Airline Pilots Ass'n Int'l*,
866 F.3d 597 (5th Cir. 2017)....10

*Christiansen v. APV Crepaco, Inc.*,
178 F.3d 910 (7th Cir. 1999)....4

*Davis v. United Steel*,
750 F. App'x 335 (5th Cir. 2018)....9, 10

*In re Enron Corp. Sec.*,
761 F. Supp. 2d 504 (S.D. Tex. 2011)....12

*Foster v. Jesel*,
164 F.4th 401 (5th Cir. 2026)....15

*Hensley v. United Transports*,
346 F. Supp. 1108 (N.D. Tex. 1972)....9

*Hill v. Est. of Hill*,
594 F. Supp. 3d 741 (N.D. Tex. 2022)....14

*Huerta v. Shein*,
498 F. App'x 422 (5th Cir. 2012)....14

*Kehm v. Air Line Pilots Ass'n Int'l*,
2015 WL 2402036 (N.D. Tex. May 19, 2015)....8

*Landry v. Air Line Pilots Ass'n Int'l AFL-CIO*,
901 F.2d 404 (5th Cir. 1990)....5

*Lee v. Cytec Indus.*,
460 F.3d 673 (5th Cir. 2006)....3

*Luna v. Am. Nat'l Ins. Co.*,
2021 WL 1911339 (W.D. Tex. May 12, 2021)....15

*Md. Manor Assocs. v. City of Houston*,
816 F. Supp. 2d 394 (S.D. Tex. 2011)....15

*Metz v. Tootsie Roll Indus.*,
715 F.2d 299 (7th Cir. 1983)....3

*N.L.R.B. v. Auto Warehousers, Inc.*,
571 F.2d 860 (5th Cir. 1978)....8

*Sawyer v. Am. Postal Workers Union*,
2011 WL 6029925 (N.D. Tex. Nov. 30, 2011)....9, 10

*Schmidt v. JP Morgan Chase Bank, N.A.*,
2018 WL 1363761 (S.D. Tex. Feb. 1, 2018)....14

*Serna v. Am. Postal Workers Union*,
2018 WL 4701833 (W.D. Tex. July 10, 2018)....5

*Taha v. Int'l Bhd. of Teamsters*,
2018 WL 6528018 (N.D. Ill. Dec. 12, 2018) .......... 4

*Tipton v. Northrop Grumman Corp.*,
2009 WL 3160163 (E.D. La. Sep. 29, 2009) .......... 7

*Turner v. Air Transp. Dispatchers' Ass'n*,
468 F.2d 297 (5th Cir. 1972) .......... 9, 11

*Walker v. Hous. Fed'n of Tchrs./AFT Loc. 2415*,
2016 WL 1275057 (S.D. Tex. Mar. 31, 2016) .......... 15

*Williams v. Cytec Indus.*,
149 F. App'x 243 (5th Cir. 2005) .......... 4

**Statutes**

29 U.S.C. § 185 .......... 11

## INTRODUCTION

Plaintiff's Amended Response in Opposition to Defendants' Motion to Dismiss ("Opposition") confirms that dismissal is warranted. It confirms that the duty of fair representation claim is untimely; it confirms that the First Amended Complaint ("FAC") merely pleads Plaintiff's disagreement with union strategy and communications; and it confirms that federal labor law bars and preempts the state law claims against Mr. Morris multiple times over. Defendants' Motion to Dismiss ("Motion") should be granted, and the FAC should be dismissed with prejudice.

## ARGUMENT

### I. PLAINTIFF HAS NOT ALLEGED A TIMELY OR PLAUSIBLE DUTY OF FAIR REPRESENTATION CLAIM

Plaintiff does not dispute the framework for analyzing a duty of fair representation claim on the pleadings: the claim is subject to a six-month limitations period; it accrues when the plaintiff knew or should have known of the acts forming the basis of the claim; and it requires plausible allegations that the union acted arbitrarily, discriminatorily, or in bad faith *and* caused the plaintiff's alleged harm. Opp'n at 8, 14, 18–19. The FAC fails every step of the analysis.

#### A. The Duty of Fair Representation Claim Is Untimely

##### 1. *Plaintiff's Claim Accrued on May 9, 2025*

The FAC's core duty of fair representation allegation is that the NFLPA dismissed Mr. Bowser's grievance (the "Grievance") over his objection. Per the first

sentence of the FAC: "This case is about a union lawyer who dismissed his client's only contractual claim after personal counsel emailed him that dismissing it was unacceptable." FAC ¶ 1. The FAC pleads that Mr. Bowser's counsel sent his email that dismissal would be "unacceptable" on April 28, 2025 (*id.* ¶¶ 34–36), the Opposition concedes that Mr. Bowser's counsel discovered from a news article published May 9, 2025 that the Grievance had been dismissed (Opp'n at 5), and the FAC pleads that the Grievance did not proceed on May 20 because the NFLPA had dismissed it. FAC ¶¶ 62–64. The duty of fair representation claim thus accrued no later than May 9, but Plaintiff waited ten months to sue—well beyond the six-month statute of limitations period.

The Opposition nonetheless nonsensically retorts that the "entire timeliness argument turns on a single false premise: that Bowser 'admittedly knew' about the dismissal 'no later than May 20, 2025.'" Opp'n at 8. But Plaintiff's counsel admits that he *did know* that the Grievance had been dismissed over his objection as early as May 9. *Id.* at 5. That knowledge is imputed to Plaintiff. *See, e.g.*, *Albrecht v. Bungalows*, 2026 WL 1847879, at *8 (W.D. Tex. Feb. 4, 2026) ("[K]nowledge acquired by the attorney is imputed to the client.").

Even if Plaintiff's counsel had not learned from a newspaper article on May 9 that the Grievance had been dismissed, it is implausible to argue that Plaintiff did not know that the NFLPA had dismissed his Grievance after the May 20 hearing

date came and went with no hearing. Mr. Bowser's counsel was involved in scheduling the Grievance hearing, the FAC is replete with allegations about rescheduling up until—but not after—May 20, and there was no hearing on May 20. *See* FAC ¶¶ 26–37. The FAC also alleges that a few weeks earlier—on April 28, 2025—Defendant Morris "asked [Plaintiff's counsel] to 'speak regarding the value of keeping this case active on our end'" and that Plaintiff's counsel promptly responded "that dismissal was unacceptable." *See id.* ¶¶ 34–36. In other words, the FAC affirmatively alleges that Plaintiff's counsel understood that the NFLPA was considering dismissing the Grievance a few weeks before the May 20 hearing date. And on top of that, the FAC alleges that "[a]fter receiving [Plaintiff's] counsel's April 28, 2025 email, Morris caused Bowser's [G]rievance to be dismissed" (*id.* ¶ 37) and that "[t]he chance to vindicate [Mr. Bowser's] contractual rights through arbitration was gone." *Id.* ¶ 38. Every which way, it is "obvious" that Plaintiff knew in May 2025 that the NFLPA had dismissed his Grievance. *See Lee v. Cytec Indus.*, 460 F.3d 673, 677 (5th Cir. 2006).

Further still, and giving Plaintiff every conceivable benefit of the doubt, in the "exercise of reasonable diligence" he "*should* have discovered" that the NFLPA was no longer pursuing his Grievance. *Metz v. Tootsie Roll Indus.*, 715 F.2d 299, 304 (7th Cir. 1983) (a union member "cannot be allowed to sit back and claim a lack of notice" where the violation "should have been discovered by a reasonably diligent" person) (emphasis added). "The standard is one of reasonable, not actual, notice and whether

or not [the union] did or did not directly notify [the member] of the finality of its decision 'is not itself a bar to accrual.'" *Taha v. Int'l Bhd. of Teamsters*, 2018 WL 6528018, at *5 (N.D. Ill. Dec. 12, 2018) (quoting *Christiansen v. APV Crepaco, Inc.*, 178 F.3d 910, 915 (7th Cir. 1999)); *Williams v. Cytec Indus.*, 149 F. App'x 243, 244 (5th Cir. 2005) (similar). All Plaintiff had to do was ask why his hearing did not occur—an answer apparently supplied by a news article.

The Opposition's reliance on *Am. Postal Workers Union*, 374 NLRB No. 92 (2026), to support Plaintiff's conflicting-signal theory is misplaced. In that case, the union steward "lied to [the member] about the status of her grievances by repeatedly indicating that he had filed and was processing them, when in fact he had never done so." *Id.* at *1. The steward went so far as "providing [the member] with fake tracking and case numbers for her grievances that were never filed." *Id.* The NLRB held that the steward's "repeated lies and false assurances" created "conflicting signals" that "seriously hampered [the member's] efforts to understand the true status of her requested grievances," and therefore the six-month deadline did not bar the member's claims. *Id.* at *7–8. The FAC contains no such allegations.

### 2. *The Fraudulent Concealment and Tolling Arguments Fail*

Plaintiff alternatively contends that even if his claim did accrue in May 2025, the limitations period should be tolled because the NFLPA's conduct post-dismissal constitutes fraudulent concealment. Opp'n at 12–13. It is hard to imagine a more

preposterous assertion of fraudulent concealment than claiming that Defendants disguised a fact that Plaintiff admittedly learned about from a public media report. Opp'n at 5. In any event, "[a]llegations of fraudulent concealment do not free plaintiffs of their obligation to exercise reasonable diligence to discover frauds perpetrated against them once they are on notice that such acts might have occurred." *Landry v. Air Line Pilots Ass'n Int'l AFL-CIO*, 901 F.2d 404, 412–13 (5th Cir. 1990).

*Serna v. Am. Postal Workers Union*, 2018 WL 4701833 (W.D. Tex. July 10, 2018), is inapposite. *See* Opp'n at 8. There, a *pro se* plaintiff brought a duty of fair representation claim based on multiple grievances he filed with his union. *Serna*, 2018 WL 4701833, at *1. He claimed that the six-month limitations period should be equitably tolled because he "did not know of the rejection of his grievances against [the local union]" until "he was informed by [the national union] that his appeal had been dismissed." *Id.* at *5. The claims concerned "multiple grievances that appear[ed] interrelated" with differing timelines. *Id.*; *see also id.* at *1 n.2 (noting that the last of the grievances was still pending arbitration during the litigation). These facts bear no resemblance to the FAC's allegations of a single Grievance that was supposed to, but did not, proceed on a specified hearing date. *See* FAC ¶¶ 34–37.[1]

#### 3. ***Obtaining the Grievance File Is Irrelevant to the Timeliness of Plaintiff's Duty of Fair Representation Claim***

[1] The FAC is also distinguishable because it does not involve a *pro se* plaintiff. *See Badaiki v. Schlumberger Holdings Corp.*, 512 F. Supp. 3d 741, 744 (S.D. Tex. 2021).

Despite conceding that Plaintiff knew on May 9 that the NFLPA had dismissed the Grievance, the Opposition contends that the limitations period did not begin until October 14, 2025, when Mr. Bowser's counsel received the rest of "the Grievance file," because the NFLPA allegedly controlled the materials that revealed the acts forming the basis of his claim.[2] Opp'n at 11. But that conflates Mr. Bowser's discovery of alleged evidence with the accrual of his claim. The relevant question is when the pleaded *injury* accrued, i.e., when Plaintiff knew or should have known that the NFLPA had stopped pursuing the Grievance over his counsel's objection. According to Plaintiff, it was unlawful for the NFLPA to dismiss the Grievance over his objection, no matter the rationale. FAC ¶ 63. Plaintiff's disagreement with the NFLPA's decision is merely a manifestation of the injury—the injury occurred when his "only contractual claim" was dismissed. *Id.* ¶ 1; *Barrett v. Ebasco Constructors, Inc.*, 868 F.2d 170, 171 (5th Cir. 1989) (the six-month period begins "when the plaintiff either knew or should have known of the injury itself, i.e., the breach of duty of fair representation, *rather than of its manifestations*") (emphasis added).

The Opposition also makes the baffling argument that:

> The reason Bowser could plead this case in March 2026 is that the two file productions, in August and October 2025, finally revealed the acts on which the claim rests: the "leverage" and "inactive" emails, the refusal of both hearing dates, and the circumstances of the dismissal itself . . . .

---

[2] The Opposition acknowledges that the NFLPA was cooperative and responsive and "produced part of the file on August 26, 2025" after Mr. Bowser's counsel requested it "a few days earlier." Opp'n at 5.

Opp'n at 12. But according to the FAC itself, "the 'leverage' and 'inactive' emails" were sent *to Mr. Bowser's counsel* on *August 7, 2024*, over a year before October 2025: "On August 7, 2024, Flanagan emailed Dortch . . . . 'Since it is better as leverage for a lawsuit, I would rather it just be inactive for awhile.'" FAC ¶ 27. Plaintiff's own admissions belie the argument that the file productions, which occurred over a year after this exchange, provided any information on which to base his claim. Indeed, the Opposition describes the October production as inconsequential—not revelatory. *See* Opp'n at 5 ("Even that production turned out to consist largely of Bowser's own medical records[.]").

Finally, Plaintiff's arguments that the clock "never started at all" on the "union's rationale and Bowser's remaining options" or that the "conduct inside the limitations window is independently actionable" are contrary to law. *Id.* at 11, 13. This transparent attempt to repurpose Mr. Bowser's claim into a continuing violations theory is irreconcilable with the FAC. There, Plaintiff repeatedly alleges that the NFLPA breached its duty of fair representation *by dismissing the Grievance* over his objection. *See generally* FAC. The FAC's allegations about later silence, a two-phased Grievance file production, and allegedly withheld internal materials all stem from the same Grievance dismissal and are thus part and parcel of the same alleged breach. *See Tipton v. Northrop Grumman Corp.*, 2009 WL 3160163, at *4 (E.D. La. Sep. 29, 2009) ("Although the manifestations of that breach may have continuing

effects, the breach itself is not continuing in nature."). Thus, the NFLPA's alleged conduct after dismissing the Grievance is not a "separately-actionable wrong" that can restart the statute of limitations clock. *Kehm v. Air Line Pilots Ass'n Int'l*, 2015 WL 2402036, at *10 (N.D. Tex. May 19, 2015); *N.L.R.B. v. Auto Warehousers, Inc.*, 571 F.2d 860, 865 (5th Cir. 1978) ("Independent violations of continuing obligations do not exist where the illegality of the conduct charged cannot be established without assessing events outside the [NLRA limitation] period.").

### B. The Duty of Fair Representation Claim Also Fails to State a Claim

Plaintiff faces an "enormous burden" to plead a duty of fair representation claim. *See* Mot. at 11–12. The FAC falls short of this high bar.

#### 1. *The FAC Does Not Include Plausible Allegations of a Breach*

The Opposition purports to identify "[f]our features" that supposedly "take this case out of the deference cases entirely." Opp'n at 14. The Opposition then offers three allegations to support the argument: that NFLPA staff attorneys (1) referred to the Grievance as "leverage" for another lawsuit and preferred it to be "inactive," (2) dismissed the Grievance, and (3) never directly informed Mr. Bowser that the Grievance was dismissed. *Id.* at 14–17. Plaintiff's arguments misapprehend the duty of fair representation. These three "features" all fall within the NFLPA's broad discretion and amount to unfortunate but legally insufficient dissatisfaction with union strategy and communications—a far cry from pleading a labor law violation.

Nowhere does the FAC even try to identify any motive or reason *why* the NFLPA would want to treat Mr. Bowser arbitrarily, discriminatorily, or in bad faith.

*First*, even if the Court were to credit Plaintiff's "interpretation" of the "leverage" email to mean that the NFLPA was subordinating Mr. Bowser's interests to the union's,[3] that would still be perfectly consonant with the NFLPA's broad labor law authority. *See Hensley v. United Transports*, 346 F. Supp. 1108, 1114 (N.D. Tex. 1972) (interests of member can be "subordinated to the interests" of the union).

*Second*, "abandon[ing] a grievance," even over objection, is a fundamental power of a union. *Turner v. Air Transp. Dispatchers' Ass'n*, 468 F.2d 297, 299 (5th Cir. 1972); *Davis v. United Steel*, 750 F. App'x 335, 339–40 (5th Cir. 2018) ("A union does not breach its duty of fair representation . . . merely because it settled the grievance short of arbitration.") (internal quotation marks omitted). It is equally axiomatic under the duty of fair representation that the NFLPA could have lawfully decided not to bring the Grievance in the first place. *See Sawyer v. Am. Postal Workers Union*, 2011 WL 6029925, at *4 (N.D. Tex. Nov. 30, 2011).

*Third*, Plaintiff's complaints about the NFLPA's alleged poor communications

---

[3] The FAC does not identify any NFLPA lawsuit that the Grievance could supposedly benefit. That is because, on the face of the FAC, the only plausible interpretation of this email is that it referred to Mr. Bowser's own personal-injury lawsuit, i.e., keeping the Grievance "inactive for awhile" could create leverage *for Mr. Bowser*. FAC ¶ 27.

and producing the Grievance file in two phases (after Plaintiff first asked in August 2025, and the rest in October 2025) fail to state an actionable claim and do not establish bad faith conduct. *See id.* at *1, *4–5 (dismissal where plaintiff alleged the union "fail[ed] to communicate with him regarding his grievances" and failed to "allege facts from which the court [could] reasonabl[y] infer" bad faith conduct); *Davis*, 750 F. App'x at 341 ("The [u]nion's failure to respond to [plaintiff's] attorney did not rise to a level that can be considered 'wholly irrational' or 'arbitrary.'") (citation omitted). *Caputo v. Nat'l Ass'n of Letter Carriers*, 730 F. Supp. 1221 (E.D.N.Y. 1990), does not compel otherwise. It explicitly recognizes that "the failure to keep a grievant informed of the status of the grievance," including failing to notify the grievant that the union has settled or withdrawn the grievance, is insufficient "as a matter of law" to establish "a breach of the duty of fair representation." *Id.* at 1230.

### 2. *The FAC Does Not Adequately Plead Causation*

Duty-of-fair-representation plaintiffs are required to plead that "the breach contributed to the erroneous outcome of the . . . proceedings." *Carr v. Airline Pilots Ass'n Int'l*, 866 F.3d 597, 602 (5th Cir. 2017) (internal quotation marks omitted). For Mr. Bowser, that meant pleading that his Grievance would have succeeded had the NFLPA not withdrawn it. But Mr. Bowser merely alleges that "The Underlying Grievance Had Real Merit" (FAC § I) and that he had "a real chance" to prevail. *Id.* ¶ 70. These allegations are as halfhearted as they are conclusory. The FAC supplies

no plausible basis to infer that the NFLPA dismissed a winning Grievance.

## II. THE CLAIMS AGAINST MR. MORRIS LIKEWISE FAIL

### A. The Claims Against Mr. Morris Are Barred by Federal Labor Law

*First*, Plaintiff concedes that Section 301 "immunizes union agents from personal liability" for actions "taken pursuant to the union's representational function under a collective bargaining agreement." Opp'n at 19 (collecting authorities). So, to try to stave off dismissal, Plaintiff argues that Mr. Morris acted "outside" his role as a union attorney. *Id.* But taking the FAC's allegations about Mr. Morris's conduct at face value, everything clearly falls within the role of an NFLPA lawyer processing a grievance. *See* FAC ¶¶ 33–37 (Mr. Morris emailed Mr. Bowser's attorney about the Grievance, notified him of the NFLMC's motion, asked about the "value" of the Grievance, and then dismissed it).

Plaintiff nevertheless argues that Mr. Morris must have dismissed the Grievance outside the scope of his employment because "no union can confer on its lawyer [that] authority." Opp'n at 19. Plaintiff cites no case law for this proposition because Plaintiff has the law backwards. Unions are free to settle or even abandon a grievance over a member's objection. *Turner*, 468 F.2d at 299; *see also* Mot. at 20.

*Second*, Plaintiff's claims against Mr. Morris are preempted by the NLRA. *See* Mot. at 19–20. The Opposition offers no response to this point, and any opposition is therefore waived. *See Arkansas v. Wilmington Tr. Nat'l Ass'n*, 2020 WL 1249570, at

*5 (N.D. Tex. Mar. 16, 2020).

*Third*, Plaintiff's claims against Mr. Morris are likewise preempted by the LMRA. *See* Mot. at 20–23. Plaintiff advocates against preemption because his state law claims supposedly require "consulting a CBA[,] not interpreting it." Opp'n at 20. But the FAC itself concedes the matter by arguing that "[e]xpert testimony about NFL grievance practice will address how the arbitrator would have ruled on timeliness and on the merits." FAC ¶ 55. It is hard to imagine a clearer acknowledgment that the state law claims would require "substantial analysis" of the CBA than Plaintiff's plan to call an expert to predict what result the CBA would have produced. Mot. at 21.

### B. The FAC Does Not State a Malpractice or Fiduciary Duty Claim

***Malpractice.*** The FAC invokes Texas ethical standards and tailors its factual averments accordingly as the basis for the malpractice claim. FAC ¶ 53. The Opposition now disclaims Texas law. Per Plaintiff, "[d]isciplinary rules inform the standard of care," Opp'n at 21, but the FAC does not cite any applicable disciplinary rules, and a party may not amend its complaint through a brief. *See In re Enron Corp. Sec.*, 761 F. Supp. 2d 504, 566 (S.D. Tex. 2011).

***Fiduciary duty.*** Plaintiff's breach of fiduciary duty claim fails because the FAC includes no allegations that Mr. Morris obtained an improper personal benefit, retained client funds, engaged in self-dealing, misused confidences, failed to disclose conflicts of interest, made misrepresentations, or acted for his own personal interest.

Mot. at 24. The Opposition tries to fill the pleadings void by arguing that Mr. Morris benefited because he "elevate[d] his employer's institutional preferences over his client's interests," "[h]is livelihood runs with his employer," and that silence was "self-protective." Opp'n at 22. On top of the fact that this new argument finds no support in the FAC, it flies in the face of Plaintiff's contradictory claim that Mr. Morris was acting *ultra vires*. FAC ¶ 39. Further, even if the Court were to agree that Mr. Morris was acting in submission to the NFLPA's interests, that conclusion would only underscore that Plaintiff's state claims are preempted by federal labor law.

The Opposition also lodges the argument that the anti-fracturing rule does not defeat the breach of fiduciary duty claim because the "gravamen is integrity and fidelity" and a "client may pursue a claim other than negligence" when the "factual basis sounds in fraud, breach of fiduciary duty, or breach of contract." Opp'n at 22–23. As the Opposition's own authority makes clear, however, "the labels assigned in the pleadings do not control" because "'[t]he gravamen of a claim is its true nature, as opposed to what is simply alleged or artfully pled.'" *Carden v. Minton*, 2026 WL 1851869, at *8 (Tex. June 26, 2026) (citation omitted). To determine whether a claim is improperly fractured, a court must "focus[] primarily on ascertaining whether the facts that are the basis for an asserted cause of action implicate only the lawyer's duty of ordinary care or independently actionable fiduciary, statutory, contractual, or other tort duties." *Brickley v. Reed*, 2023 WL 2376127, at *2 (Tex. App. Mar. 7, 2023).

Here, the FAC alleges that Mr. Morris dismissed the Grievance over Plaintiff's objection and did not sufficiently communicate about it. *See* FAC ¶ 74. Such allegations do not implicate any independently actionable duties by Mr. Morris. *See Huerta v. Shein*, 498 F. App'x 422, 428 (5th Cir. 2012) ("[T]he failure to disclose significant information about a client's case is professional negligence and not a breach of fiduciary duty."); *Brickley*, 2023 WL 2376127, at *2 ("[A]s long as the crux of the complaint" is that the "attorney did not provide adequate legal representation, the claim is one for legal malpractice."). Consequently, the breach of fiduciary duty claim is an improperly fractured negligence claim and is barred.

## III. THE COURT MAY CONSIDER DEFENDANTS' EXHIBITS

On a pleadings motion, the Court may still consider " 'any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint.' " *Schmidt v. JP Morgan Chase Bank, N.A.*, 2018 WL 1363761, at *3 (S.D. Tex. Feb. 1, 2018) (citation omitted). The CBA (Mot. Ex. A) and the NFLMC's motion (Mot. Ex. C) are referenced throughout the FAC and central to Plaintiff's claims. *See, e.g.*, FAC ¶¶ 24, 38–39 (discussing the CBA); *id.* ¶¶ 32, 34 (discussing the NFLMC's motion). The exhibits may therefore be considered.

Moreover, "[i]t is well-established and clearly proper in deciding a 12(b)(6) motion [that a court may] take judicial notice of matters of public record." *Hill v. Est. of Hill*, 594 F. Supp. 3d 741, 759 (N.D. Tex. 2022) (citation modified). The

*Weinberg* hearing transcript (Mot. Ex. B)[4] and the CBA are both matters of public record and could be referenced whether the FAC had mentioned them or not. *See Md. Manor Assocs. v. City of Houston*, 816 F. Supp. 2d 394, 404 n.5 (S.D. Tex. 2011).

All that said, the Court possesses "complete discretion" to ignore any exhibit rather than treating the Motion as one for summary judgment. *See Luna v. Am. Nat'l Ins. Co.*, 2021 WL 1911339, at *4 (W.D. Tex. May 12, 2021); *Ace Am. Ins. Co. v. Huntsman Corp.*, 255 F.R.D. 179, 188 (S.D. Tex. 2008). While the exhibits here may be properly considered on the pleadings and support the Motion, considering them is not necessary to grant the Motion.

## IV. FURTHER AMENDMENT WOULD BE FUTILE

Futility is not a "strange" argument for Defendants to make (Opp'n at 25)—especially not when claims like these against a union and its lawyers are routinely dismissed with prejudice. *See, e.g.*, *Foster v. Jesel*, 164 F.4th 401, 404–05 (5th Cir. 2026); *Walker v. Houston Fed'n of Tchrs./AFT Loc. 2415*, 2016 WL 1275057, at *9 (S.D. Tex. Mar. 31, 2016). And especially not when Plaintiff has already amended once to no avail. The FAC is fundamentally defective and not susceptible to cure.

## CONCLUSION

For the foregoing reasons, the FAC should be dismissed with prejudice.

[4] The *Weinberg* transcript was cited for *legal*—not factual—support. *See* Mot. at 8.

Dated: August 20, 2026

Respectfully submitted,

By: */s/ David L. Greenspan*
David L. Greenspan (admitted *pro hac vice*)
WINSTON TAYLOR LLP
200 Park Avenue
New York, NY 10166-4193
Tel: (212) 294-6700
Fax: (212) 294-4700
david.greenspan@winstontaylor.com

*Attorney-in-Charge for Defendants National Football League Players Association and Andrew Morris*

Of Counsel:

William M. Logan
WINSTON TAYLOR LLP
Tex. Bar No. 24106214
S.D. Tex. Bar No. 3267185
800 Capitol Street, Suite 2400
Houston, TX 77002-2925
Tel: (713) 651-2600
Fax: (713) 651-2700
william.logan@winstontaylor.com

Jeffrey L. Kessler (*pro hac vice*)
Adam I. Dale (*pro hac vice*)
WINSTON TAYLOR LLP
200 Park Avenue
New York, NY 10166-4193
Tel: (212) 294-6700
Fax: (212) 294-4700
jeffrey.kessler@winstontaylor.com
adam.dale@winstontaylor.com

Hannah M. Shankman (*pro hac vice*)
WINSTON TAYLOR LLP

1901 L St NW
Washington, DC 20036-3506
Tel: (202) 282-5000
Fax: (202) 282-5100
hannah.shankman@winstontaylor.com

*Attorneys for Defendants*
*National Football League Players*
*Association and Andrew Morris*

## CERTIFICATE OF SERVICE

I certify that, consistent with Local Rule 5.1 and the Court's Procedure II.7, all counsel of record who have appeared in this case are being served with a copy of the foregoing via the Court's CM/ECF system on August 20, 2026.

*/s/ David L. Greenspan*
David L. Greenspan